**Jeanne H. HARDY,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 1013, Docket 89–2008.

United States Court of Appeals,
Second Circuit.

Argued April 13, 1989.

Decided June 30, 1989.

---

Hardy sought to vacate her sentence on the ground that the sentencing judge's ownership of shares in one of the banks she defrauded created an appearance of impropriety, requiring recusal under 28 U.S.C. § 455(a) (1982). Without reaching the merits of the recusal issue,[1] we affirm because Hardy's assertion of her section 455(a) claim was untimely.

### Background

In June 1987, a federal grand jury indicted Hardy and her husband on charges of defrauding and conspiring to defraud several federally insured banks in Vermont, including Chittenden Bank ("Chittenden"). After initially pleading not guilty, Hardy pled guilty before Chief Judge Coffrin to four counts of the indictment.

On the day sentencing was scheduled, Hardy learned from a cellmate that Judge Coffrin owned stock in Chittenden. The chief probation officer confirmed the information to Hardy's attorney, saying it was "public knowledge" in Burlington, and informed the Judge of Hardy's concern. Chief Judge Coffrin then held an on-the-record conference in his chambers with the attorneys for Hardy and her husband, who were represented separately.

 The District Judge acknowledged owning stock in Chittenden and noted that the other two district judges in Vermont also owned stock in the bank. He said that his general practice in criminal cases involving the bank was that if there was a likelihood that restitution would be ordered, he would recuse. But in this case, he said, he had read the presentence report and had decided that he would not order restitution. Therefore, he did not believe that he had a conflict of interest, and he did not intend to recuse.[2] He said that when

Mark D. Oettinger, Burlington, Vt. (Bloomberg & Oettinger, Burlington, Vt., on the brief), for petitioner-appellant.

David V. Kirby, Chief, Crim.Div., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., John M. Conroy, Asst. U.S. Atty., Burlington, Vt., on the brief), for respondent-appellee.

Before NEWMAN, CARDAMONE, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the timing of a recusal challenge. Jeanne Hardy appeals from an order of the District Court for the District of Vermont (Albert W. Coffrin, Chief Judge), denying her motion, brought pursuant to 28 U.S.C. § 2255 (1982), to vacate a sentence imposed for bank fraud.

---

1. There is disagreement among the circuits that have considered this issue. *Compare United States v. Nobel*, 696 F.2d 231 (3d Cir.1982) (judge should recuse), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983), *with United States v. Sellers*, 566 F.2d 884 (4th Cir.1977) (recusal not required); *see also United States v. Ravich*, 421 F.2d 1196 (2d Cir.) (recusal not required under earlier version of section 455), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

2. Though our disposition of this appeal makes it unnecessary to decide the ultimate merits of the recusal issue, we do express our disagreement with the view that the judge's decision not to order restitution obviated whatever ground for recusal might have existed. If the circumstances in fact warranted recusal from the case, then

recusal was warranted in a case involving Chittenden, the case was sometimes assigned to Judge Gagliardi, senior district judge in the Southern District of New York, or to Chief Judge Oakes of the Second Circuit, each of whom has chambers in Vermont. Judge Coffrin noted that Judge Gagliardi was not available at that time, so that if Hardy sought recusal, she would not "get anybody here except perhaps Judge Oakes."

At the end of the conference, Chief Judge Coffrin told the attorneys to talk with their clients, and "[i]f you have any reservations then come back and we'll go into further detail." At no time during the conference did Hardy's attorney make a formal motion that the District Judge recuse, nor did she make such a motion after meeting with Hardy in the courtroom prior to sentencing. After hearing from Hardy and her counsel with respect to the sentence, Chief Judge Coffrin sentenced Hardy to four consecutive terms of imprisonment of five years each, the statutory maximum. He noted that the severity of the sentence was based on the massiveness of the fraud and Hardy's prior record, which included three prior felony convictions. Since the offense occurred prior to November 1, 1987, the Sentencing Guidelines were inapplicable.

Hardy did not appeal the judgment to challenge the sentence. Instead, she brought a collateral attack under 28 U.S.C. § 2255 to vacate the sentence, contending that Judge Coffrin should have recused. Hardy's trial counsel, who had withdrawn after the sentencing, submitted an affidavit stating that she had misunderstood what Chief Judge Coffrin had said at the chambers conference and had misinformed Hardy about what the Judge had said. The lawyer said that after reviewing the transcript of the chambers conference, she realized she had mistakenly told Hardy that the Judge had said that Hardy's only option was to be sentenced by another judge who also owned Chittenden stock. Hardy's new counsel contended that Judge Coffrin

the judge could not properly make the decision whether to order restitution. The fact that this ruling was adverse to the bank has no bearing

should have recused because the Judge's stock ownership in the bank constituted a financial interest in the subject matter in controversy, see 28 U.S.C. § 455(b)(4), and provided grounds for reasonably questioning his impartiality, see 28 U.S.C. § 455(a).

Judge Coffrin rejected both grounds for relief. He ruled that stock ownership in the corporate victim of a crime, without more, was not a financial interest that "could be substantially affected by the outcome of the proceeding," the criterion for disqualification under section 455(b)(4). He also rejected the section 455(a) claim, ruling that under the facts and circumstances at the time of sentencing, his impartiality could not reasonably be questioned, and that even if it could, Hardy "by her silence" waived disqualification under section 455(e).

On appeal, Hardy abandons her section 455(b)(4) contention, and we therefore do not consider it. Her sole ground of appeal involves the District Judge's ruling on the section 455(a) "appearance of impropriety" claim.

### Discussion

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Unlike section 455(b), which enumerates specific circumstances constituting *actual* conflicts of interest, the purpose of section 455(a) is "to promote confidence in the judiciary by avoiding even the *appearance* of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, —— U.S. ——, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988) (emphasis added).

■ Section 2255 provides a mechanism for federal prisoners to vacate sentences imposed in violation of the laws or Constitution of the United States. The grounds for relief that are available on collateral attack under section 2255, however, are not as broad as are available on direct appeal.

on whether the judge was eligible to make the ruling.

Generally, relief is available under section 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes " 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

We do not think that section 455(a)'s appearance of impropriety standard is mandated by the Due Process Clause, and we doubt that an *appearance* of impropriety under section 455(a), without more, constitutes the type of "fundamental defect" that would justify vacating an otherwise lawful sentence under section 2255.[3] Thus, prior to the Supreme Court's decision in *Liljeberg*, we would have thought that section 2255 could not be used to challenge a judge's qualification to preside in a criminal case solely on the ground of an appearance of impropriety.[4] In *Liljeberg*, however, the Supreme Court ruled that a civil judgment could be attacked collaterally by a motion under Fed.R.Civ.P. 60(b) challenging a judge's denial of a motion to recuse on grounds of appearance of impartiality. Whether the Court would reach the same conclusion in a criminal case is not certain, but the analogy is sufficiently close to warrant our assumption, for purposes of this appeal, that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality.

The general availability of section 2255, however, even if assumed, would not entitle Hardy to relief in the circumstances of this case. In *Liljeberg* the Court ruled

that collateral attack under Rule 60(b) was warranted "unless it can be said that [the party claiming disqualification] did not make a timely request for relief." 108 S.Ct. at 2206. The Court also stated that "normally" a delay in challenging the qualifications of the trial judge until after affirmance by the court of appeals would preclude relief, but collateral attack was available in *Liljeberg* because the complainant initiated its challenge to the trial judge immediately upon learning the facts that created the appearance of impartiality. Finally, the Court pointed out that had the trial judge disclosed the facts concerning his relationship to the subject of the litigation at the time when these facts had been brought to his attention, the complainant could have moved for recusal within the ten-day period allowed for post-trial motions. *See* Fed.R.Civ.P. 59. This observation is especially significant because it indicates that the court was allowing a collateral attack only because the trial judge's unwarranted non-disclosure had prevented the complainant from pursuing its challenge on direct review—first by a ten-day motion and then by appeal.

The teaching we derive from *Liljeberg* is that appearance of impropriety may be raised on collateral attack only if asserted promptly upon learning the facts alleged to warrant recusal and may not be raised collaterally if the opportunity to do so existed at a time when direct review was available. It is especially appropriate to apply that rule to an attempted collateral attack on a criminal judgment because of the usual rule that in criminal cases, a collateral attack may not "do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982

---

**3.** There may be cases in which an appearance of impropriety rises to the level of a Due Process violation. *E.g., Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). But here, Hardy alleges only a statutory, and not a constitutional, violation.

**4.** The Seventh Circuit has gone so far as to hold that a challenge for appearance of impropriety will not be entertained in a criminal case even on direct review, but must be promptly presented to the court of appeals in a petition for mandamus immediately after the judge declines

to recuse and before any further steps are taken in the litigation. *United States v. Balistrieri*, 779 F.2d 1191, 1204–05 (7th Cir.1985), *cert. denied sub nom. DiSalvo v. United States*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). Unlike the Seventh Circuit, this Circuit will entertain a section 455(a) recusal claim on direct review, if properly preserved by a timely motion. *See United States v. Diaz*, 797 F.2d 99 (2d Cir.1986), *cert. denied,* —— U.S. ——, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988).

(1947). Absent exceptional circumstances, a non-constitutional and non-jurisdictional claim may not be raised collaterally under section 2255 where it could have been, but was not, raised on direct appeal. *Brennan v. United States,* 867 F.2d 111, 120–21 (2d Cir.1989). Hardy's claim is solely statutory and rests only on the appearance of impropriety ground of section 455(a). Since she was aware of the district judge's stock holdings at a time when direct appeal was available, she may not pursue the matter under section 2255.

In view of our grounds for affirmance, we need not consider the District Court's conclusion that Hardy waived any claim under 455(a) by not moving for recusal prior to sentencing. Though such a motion is normally required to preserve the issue for appellate review, *see DeLuca v. Long Island Lighting Co.,* 862 F.2d 427, 429 (2d Cir.1988); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir.1986) ("Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits."), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), it is arguable that Hardy's counsel adequately raised the issue with the judge at the chambers conference. A formal motion, however, is always preferable, despite the discomfort counsel may feel in making it, so that there will be no doubt that the litigant is not merely questioning whether the judge may preside, but is seeking his recusal.[5]

The order of the District Court denying the motion for relief under section 2255 is affirmed.

---

**5.** To whatever extent the District Judge may have relied on the waiver provisions of section 455(e), such reliance was ill-advised. That section contemplates what is more properly called a "remittal" of disqualification. Once a judge determines that he or she is disqualified on the ground of appearance of impropriety under section 455(a), the judge may nevertheless proceed if all parties affirmatively consent. The Code of Judicial Conduct for United States Judges

("*Code*") provides a precise procedure (and form) to be used to assure that the judge is not involved in the obtaining of remittals from the parties and will therefore not become aware of the indentity of any party or counsel who declines to furnish a remittal. *See Code,* Canon 3 D (1986 revision); *Manual for Code of Conduct* Annotation 13 to Canon 3 D, at I–25A (October 1987).