UNITED STATES of America, Plaintiff–Appellee,

v.

**Kent Borden ROGERS, Defendant–Appellant.**

No. 91–50090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1992.

Decided Jan. 22, 1993.

---

Norman D. James, Woodland Hills, CA, for defendant-appellant.

Leslie Swain and Sharon McCaslin, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Rogers pled guilty to mail fraud and was sentenced to eight years imprisonment and ordered to pay $70.7 million in restitution. The government concedes that the imposition of restitution was improper, but the parties disagree on the proper remedy. Rogers also contends that his plea was coerced by the imposition of an IRS jeopardy assessment. We vacate Rogers' sentence and remand for resentencing or, at the discretion of the district court, for the withdrawal of Rogers' guilty plea.

I

In April 1988, the IRS brought a jeopardy assessment against Rogers and his company for alleged tax deficiencies for the years 1983 and 1984. Rogers claims that the jeopardy assessment tied up nearly all of his assets.

On May 10, 1989, Rogers, along with others, was indicted on mail fraud charges. On February 26, 1990, Rogers pled guilty to two counts of mail fraud. The plea agreement was silent on the subject of restitution. When Rogers entered his guilty plea, the district court did not discuss with him the possibility of restitution. Rogers was sentenced on October 22, 1990 to eight years in prison and was ordered to pay $70.7 million in restitution to Bank of America.

In December 1990, the IRS settled with Rogers regarding the alleged tax deficien-

cies and lifted the jeopardy assessment on Rogers' assets. Under the settlement, Rogers' company, Westpac, was declared to have no tax deficiency, but Rogers agreed to pay $150,000 to settle his personal tax liability. Shortly thereafter, Rogers filed a motion to vacate the judgment of conviction and requested an evidentiary hearing pursuant to 28 U.S.C. § 2255. The district court denied the motion to vacate without an evidentiary hearing, and Rogers timely appealed.

## II

Rogers claims that his plea was involuntary and unconstitutional under the Fifth and Sixth Amendments and he seeks to have the plea withdrawn. He contends that the jeopardy assessment prevented him from using his assets to mount a defense by leaving him unable to hire investigators and accountants,[1] and that as a consequence he was forced to plead guilty. Rogers never asked the court for assistance in paying for investigators and accountants, however, and indeed did not allege that his plea was coerced until ten months after it was entered.

In support of his claim of unconstitutional coercion of his plea, Rogers alleges numerous facts outside of the record concerning the relationship between certain Bank of America employees and the Laguna Niguel, California office of the IRS. Given this absence of a record, we cannot reach the merits of Rogers' claims of IRS misconduct. The only question we can address is whether the district court abused its discretion in declining to hold an evidentiary hearing to develop the facts Rogers has alleged. *See Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1398, 113 L.Ed.2d 454 (1991) (denial of § 2255 evidentiary hearing reviewed for abuse of discretion).

■ Rogers' allegations fail to demonstrate an infringement of his Sixth Amendment right to counsel. Assuming that the IRS properly seized certain assets to se-

cure potential tax liabilities, Rogers has no legitimate complaint; "[t]here is no constitutional principle that gives one person the right to give another's property to a third party, even where the person seeking to complete the exchange wishes to do so in order to exercise a constitutionally protected right." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 628, 109 S.Ct. 2646, 2653, 105 L.Ed.2d 528 (1989). Put another way, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Id.* at 626, 109 S.Ct. at 2652. The "[Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Id.* at 624, 109 S.Ct. at 2652. Although *Caplin & Drysdale* concerned a drug forfeiture statute, the reasoning is equally applicable to the jeopardy assessment in the instant case. Indeed, the Court relied on the *uncontested* constitutionality of jeopardy assessments in concluding that the drug forfeiture statute in question was valid. *See id.* at 631–32, 109 S.Ct. at 2655–56. Thus, the mere fact that the jeopardy assessment deprived Rogers of the resources to hire the investigators and accountants of his choice does not in itself violate the Sixth Amendment.

■ Rogers also contends, however, that the supposed *improper motivation* of the jeopardy assessment violated the Due Process Clause of the Fifth Amendment. In *Caplin & Drysdale,* after rejecting a claim that the drug forfeiture statute was unconstitutional under a Sixth Amendment right to counsel theory, the Court turned to the claim that such statute violated the Due Process Clause "because it permits the Government to upset the balance of forces between the accused and his accuser." *Id.* at 633, 109 S.Ct. at 2656 (quotation omit-

---

**1.** Rogers did retain defense counsel.

ted). The petitioner had failed to allege any prosecutorial misconduct, and the Court rejected the theory that the drug forfeiture statute on its face violated the Due Process Clause. The Court held out the possibility, however, that due process challenges to the forfeiture statute would be cognizable, inter alia, "in specific cases of prosecutorial misconduct." *Id.* at 634, 109 S.Ct. at 2657. Rather than hold the statute unconstitutional on its face merely because it had the potential for abuse, the Court stated that "[c]ases involving particular abuses can be dealt with individually by the lower courts, when (and if) any such cases arise." *Id.* at 635, 109 S.Ct. at 2657.

Rogers argues that his case presents just such an instance of abuse. He claims that the IRS was motivated by the "corrupt influence" of Bank of America in bringing the jeopardy assessment against him. Rogers names an individual whom he claims Bank of America hired to influence the IRS's jeopardy assessment investigation. That individual is alleged by Rogers to have ties to certain officials in the Laguna Niguel IRS office, from which the jeopardy assessment originated. Rogers further claims that the IRS's calculation of his supposed tax deficiency was based on erroneous information provided by Bank of America. Rogers notes that the jeopardy assessment was lifted after he pled guilty and was sentenced to pay $70 million to Bank of America, and that in the end, after initially claiming a $25 million deficiency, the IRS entered into a settlement stipulating no tax liability against his company, Westpac, and only the relatively small sum of $150,000 against him personally. Rogers claims that this supposed vendetta against him by the IRS is being investigated by the Department of Justice.

We need not decide, however, whether the type of misconduct alleged here could, in some circumstances, amount to a viola-

tion of due process. Even assuming the truth of Rogers' claim of an improper and corrupt motivation behind the IRS jeopardy assessment, the relationship of such IRS improprieties to the voluntariness of his guilty plea is remote. Rogers has not explained how, as a result of the jeopardy assessment, he was *coerced* into pleading guilty. Moreover, Rogers has offered no justification for the eight-month delay in bringing the motion. If his client did not want to plead, counsel should have called to the court's attention Rogers' lack of funds, the reason for the lack of funds, and the government's alleged improper motivation. The district court should not be told eight months after the fact that the defendant was under duress because the government had illegally seized his assets. We conclude, therefore, that the district court did not abuse its discretion in deciding not to hold an evidentiary hearing on this matter.[2]

### III

Rogers argues that the imposition of a $70 million restitution order by the district court was improper because (1) the district court failed to follow Federal Rule of Criminal Procedure 11(c)(1), which requires the court accepting a guilty plea to inform the defendant of the possibility of restitution, and (2) although his plea agreement was silent on the subject, the government recommended $70 million in restitution, arguably breaching the agreement.[3] It is undisputed that the district court did in fact neglect to inform Rogers of the possibility of restitution at the February 26, 1990 hearing at which Rogers pled guilty, and the government has conceded that a violation of Rule 11 occurred.[4]

The parties disagree, however, on the proper remedy for that violation. Rogers argues that he must be given the opportu-

---

2. We express no view on whether Rogers would have a *Bivens* action against the IRS officials who he alleges maliciously brought the jeopardy assessment.

3. Because we conclude that Rogers is entitled to the same remedy for the violation of Rule 11 as he would have been had the government

breached the plea agreement, we do not reach Rogers' contention that the government breached his plea agreement by recommending restitution of $70 million.

4. The government has not conceded, however, that the plea agreement was breached.

nity to withdraw his plea. The government contends that the district court should be permitted to remedy the Rule 11 violation by either resentencing without restitution or allowing Rogers to withdraw his plea.

The provision of Rule 11 that the district court neglected here, which specifically requires the court to tell the defendant of the court's power to order restitution, was added in 1985. We have not had occasion since that language was added to Rule 11 to determine the proper remedy when the district court fails to follow its requirements and then later imposes restitution.[5] The Fifth Circuit, however, has stated in such a case that "[b]ecause the district court may have considered the restitution order essential to the sentence, we remand and give the district court the option either to resentence [the defendant] without ordering him to pay restitution or to permit withdrawal of his guilty plea, allowing the government to reprosecute him if it sees fit." *United States v. Corn*, 836 F.2d 889, 895 (5th Cir.1988). The Second Circuit follows the same practice. Upon concluding that the district court had violated Rule 11(c)(1) by failing to inform the defendant of the possibility of restitution, the appellate court ordered the defendant's guilty plea vacated. *United States v. Khan*, 869 F.2d 661, 662 (2d Cir.1989), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 674 (1991). Later, the court granted the government's petition for rehearing and amended its decision to allow the district court the option simply to excise from the sentence the improper restitution order. *Id.*[6] This is consistent with our practice in the analogous context of a restitution order that breaches a plea agreement. *See United States v. Benchimol*, 738 F.2d 1001, 1003 (9th Cir. 1984) ("The appropriate remedy for the government's breach of a plea agreement

is within the discretion of the court depending on the particular circumstances of each case."), *rev'd on other grounds*, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985).

The development of the present Rule 11 supports the view that the district court should be given the opportunity, at its discretion, to render harmless its earlier oversight by deleting the restitution portion of Rogers' sentence. Rule 11 as originally adopted was merely a general instruction to the sentencing court to verify that the defendant's plea was knowing and voluntary and had a factual basis. *See McCarthy v. United States*, 394 U.S. 459, 462 n. 4, 89 S.Ct. 1166, 1169 n. 4, 22 L.Ed.2d 418 (1969). Any violation of the rule was held to be per se reversible error, requiring that the defendant be allowed to "plead anew." *Id.* at 463–64, 89 S.Ct. at 1169–70. As Rule 11 was converted into a checklist of particular items for the court to discuss with the defendant, however, it also became clear that certain violations of the increasingly detailed procedures of Rule 11 might not amount to reversible error. *See* Fed. R.Crim.P. 11, advisory committee's note (1985 Amendment). Thus, in 1983 Rule 11 was amended to add a harmless error provision stating that "[a]ny variance from the procedures required by this rule which does affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). The requirement that the defendant be informed of the possibility of restitution was another step in the increasing specificity of Rule 11. To apply the rather drastic remedy of vacating a conviction whenever a court overlooks this particular requirement is inconsistent with the intent of the drafters of Rule 11 in adding a harmless error provision. Rather, it is in keeping with the harmless error provision to permit the sentencing court the opportunity to render its

---

**5.** We have held, however, that where the court fails to mention the possibility of restitution, but does mention the possibility of a fine, and the amount of restitution ordered is less than the warned-of fine, the Rule 11 violation is harmless. *See United States v. Pomazi*, 851 F.2d 244, 248 (9th Cir.1988).

**6.** The Tenth Circuit has also followed a substantially similar practice. Where the defendant

had advanced a credible claim of a failure by the district court to inform him of the possibility of restitution in violation of Rule 11, the case was remanded for either (1) an evidentiary hearing on when the defendant first learned of the possibility of restitution, (2) resentencing without restitution, or (3) vacation of the plea. *United States v. Pogue*, 865 F.2d 226, 229–30 (10th Cir.1989).

error harmless and preserve the underlying plea. *See Khan*, 869 F.2d at 662.

To take away the district court's discretion and, as urged by Rogers, instruct the court to accept the withdrawal of Rogers' guilty plea, might provide a windfall to Rogers if the government were forced by the passage of time to drop its case against him. Likewise, mandating that the district court resentence without restitution might provide its own windfall to Rogers if the government were prepared to revive its prosecution of him. We believe it preferable to allow the district court to decide in the first instance whether the interests of justice in this particular case are better served by merely resentencing without restitution or by allowing Rogers to withdraw his plea.

We vacate Rogers' sentence and remand with instructions to the district court to exercise its discretion either to resentence Rogers without restitution, or to allow Rogers to withdraw his plea.

SENTENCE VACATED and REMANDED with INSTRUCTIONS.