**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kent Borden ROGERS, Defendant–
Appellant.**

No. 96–50035.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1997.

Decided July 14, 1997.

Peter Goldberger, Alan Ellis, Pamela A. Wilk, Law Offices of Alan Ellis, Ardmore, PA, for defendant–appellant.

Leslie A. Swain, Assistant United States Attorney, Los Angeles, CA, for plaintiff–appellee.

Before: FLETCHER and TROTT, Circuit Judges, and JENKINS,* District Judge.

JENKINS, Senior District Judge.

## OVERVIEW

On October 20, 1994, United States District Judge Dickran M. Tevrizian, Jr. resentenced the defendant, Kent Borden Rogers, to eight years' imprisonment based upon Rogers' guilty plea to two counts of mail fraud. Almost one year after his resentencing, Rogers filed a motion under Fed. R.Crim.P. 35 seeking to have his sentence corrected or vacated because of the district court's alleged failure to rule on his objection to the presentence report as required by Fed.R.Crim.P. 32(c)(3)(D). At the same

---

* The Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation.

time, Rogers filed a motion for the disqualification of Judge Tevrizian. Both motions were denied; the second by Judge Gadbois and the first by Judge Tevrizian. Rogers now argues that Judge Tevrizian should have been disqualified because the Judge owned stock in the bank that was the purported victim of Rogers' offense of conviction. Rogers also argues that the district court, at or prior to his resentencing, failed to resolve a factual dispute regarding the presentence report as required by Fed.R.Crim.P. 32(c)(3)(D). Because the district court did not abuse its discretion when it denied Rogers' motion to disqualify, and it did not err when it denied Rogers' Rule 35 motion, we affirm the orders of the district court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 10, 1989, Rogers, David A. Feldman, and George Ash, were charged in a twenty-count Indictment with mail fraud in violation of 18 U.S.C. § 1341. On February 26, 1990, pursuant to a plea agreement, Rogers pled guilty to counts six and fourteen of the Indictment. On October 20, 1990, Judge Tevrizian sentenced Rogers to eight years' imprisonment and ordered Rogers to pay the Bank of America $70.7 million in restitution. On appeal, we held that the imposition of restitution was improper and remanded the case with the mandate that the district court "exercise its discretion" either to resentence Rogers without an order of restitution, or permit Rogers to withdraw his guilty plea. *United States v. Rogers*, 984 F.2d 314, 319 (9th Cir.1993). On October 20, 1994, Judge Tevrizian abided by our mandate and resentenced Rogers to eight years' imprisonment without an order of restitution.[1]

Meanwhile, in June of 1990, Judge Tevrizian presided over a ten-week jury trial in which defendant Feldman was convicted of three counts of mail fraud. On August 20, 1990, Judge Tevrizian sentenced Feldman to fifteen years' imprisonment and ordered him to pay $70.7 million in restitution to the Bank of America. Feldman timely appealed his conviction and sentence. While that appeal was pending, Feldman filed a motion to disqualify Judge Tevrizian. The motion was denied by Judge Kenyon. Feldman appealed from that ruling as well.

In August 1991, while Feldman's appeals were pending, the Bank of America announced a merger with Security Pacific National Bank. As a result of that merger, Judge Tevrizian, a stockholder of Security Pacific, would receive shares in Bank of America. In addition, Judge Tevrizian owned property that had been leased to a Security Bank branch-a lease that would now be taken over by Bank of America. Because he now had a financial interest in the purported victim of the crime, and the corporate entity to whom restitution might flow, Judge Tevrizian *sua sponte* recused himself from any further matters relating to Feldman's restitution.

On December 17, 1992, we held that under the recusal statutes, 28 U.S.C. §§ 144 & 455, because Judge Tevrizian voluntarily recused himself from one portion of the case (restitution), he must also be disqualified from the "whole proceeding." *United States v. Feldman*, 983 F.2d 144, 145 (9th Cir.1992). Although we characterized Judge Tevrizian's action in recusing himself as "prudent," we expressly noted that these facts provide "no basis from which to draw an inference of actual bias." *Id.* The case was then remanded to Judge Kenyon who resentenced Feldman to a prison term of twelve years with no restitution.

On September 15, 1995, Rogers filed a motion to correct his sentence under Fed. R.Crim.P. 35. In addition, Rogers, citing the *Feldman* case above, moved for the disqualification of Judge Tevrizian. In accordance with the local district court rules, the motion to disqualify was assigned to Judge Richard A. Gadbois, Jr. On October 3, 1995, Judge

---

1. Judge Tevrizian did change the custodial sentence ever so slightly. Originally, Rogers was given five years on one count and three years on the other. Since the sentences were to run consecutively, the total sentence was eight years. On resentencing Rogers, Judge Tevrizian imposed four years on each of the two counts. The total sentence, however, still remained eight years. The record does not offer, nor do the parties suggest, any explanation for this slight difference.

Gadbois, noting that "the reasons that applied to Judge Tevrizian's recusal in Feldman's case [did] not apply to Rogers' case," denied the motion. Shortly thereafter, on October 16, 1995, Judge Tevrizian denied Rogers' Rule 35 motion. On November 8, 1995, more than ten days after entry of the order denying his Rule 35 motion, Rogers filed a notice of appeal. In an order dated April 4, 1996, Judge Tevrizian found excusable neglect for Rogers' late filing and permitted this appeal to go forward.

## STANDARD OF REVIEW

 We review the denial of a motion for disqualification for abuse of discretion. *United States v. Chischilly*, 30 F.3d 1144, 1149–50 (9th Cir.1994), *cert. denied*, 513 U.S. 1132, 115 S.Ct. 946, 130 L.Ed.2d 890 (1995); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir.1992). We review *de novo* the issue of whether the district court complied with Fed.R.Crim.P. 32(c)(3)(D). *United States v. Lujan*, 936 F.2d 406, 412 (9th Cir.1991).

## DISCUSSION

Rogers argues that Judge Tevrizian should have been disqualified, pursuant to 28 U.S.C. § 455, both from resentencing Rogers in October 1994, and from ruling on Rogers' more recent Rule 35 motion. Rogers bases his argument on two grounds: (1) that Judge Tevrizian's financial interest in Bank of America warranted recusal; and (2) that Judge Tevrizian's recusal in the *Feldman* case established the "law of the case" and thus mandated recusal.

I. Disqualification under 28 U.S.C. § 455

A. Timeliness and Waiver

 Whether Rogers raised the disqualification issue in a timely fashion presents a serious threshold issue. *E. & J. Gallo*, 967 F.2d at 1295. In fact, 28 U.S.C. § 144 expressly requires that a motion to disqualify must be "timely," and we have judicially required as much under 28 U.S.C. § 455. *See, e.g., Davies v. Commissioner*, 68 F.3d 1129, 1131 (9th Cir.1995) ("Recusal motions [under § 455(a) ] 'must be made in a timely

fashion.' ") (quoting *E. & J. Gallo*, 967 F.2d at 1295); *see also United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir.1990) (listing cases from other circuits that recognize a timeliness element under § 455). As we have often stated, a party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention. *E. & J. Gallo*, 967 F.2d at 1295. "A defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *United States v. Branco*, 798 F.2d 1302, 1304 (9th Cir.1986) (quoting *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir.), *cert. denied*, 339 U.S. 988, 70 S.Ct. 1010, 94 L.Ed. 1389 (1950)). Absent a timeliness requirement, parties would be encouraged to "withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455 in order to get a second bite at the apple." *E. & J. Gallo*, 967 F.2d at 1295.

 At no time prior to September 15, 1995, did Rogers make a formal motion for Judge Tevrizian's disqualification. However, on March 11, 1994, just days before he was scheduled to be resentenced, Rogers submitted a letter to the probation office in which he claimed, among other things, that Judge Tevrizian should not be permitted to resentence him due to a "conflict of interest" based on the Judge's "ongoing relationship with Bank of America." The letter specifically referred to Judge Tevrizian's disqualification in *Feldman* as support for the Judge's disqualification from Rogers' resentencing. Rogers also claimed that Judge Tevrizian had predetermined the sentence he would impose and supposedly had informed the prosecution as much at a dinner party at the judge's home. This letter was transmitted to Judge Tevrizian as an attachment to the probation office's Second Supplemental Report.

Judge Tevrizian initially responded to these claims on the date Rogers was originally scheduled for resentencing, March 21, 1994. Although Rogers had notice of this hearing, he failed to appear. On October 20,

1994, Judge Tevrizian again responded to the suggestions of judicial bias contained in the March 11th letter. Judge Tevrizian recited the on-record colloquy he held with the prosecutor and Rogers' defense counsel on March 21, 1994, in which he described the history and extent of his financial interest in the Bank of America and the issue of his disqualification in the *Feldman* case.[2] Judge Tevrizian then discussed the letter and the purported disqualification request with Rogers as follows:

THE COURT: ... The matter was here on March 21st, 1994 for that decision and Mr. Rogers did not show up. There was at that time a document that was filed by Mr. Rogers, a letter, that indicated that Mr. Rogers had some problems with the Court.

On March 21st, 1994, on the record, I reviewed the allegations that Mr. Rogers had made in his letter. I think I should take care of those items first.

MR. JAMES [defense counsel]: Your Honor?

THE COURT: Yes.

(Pause)

MR. JAMES: Mr. Rogers has informed me just a minute ago, and also earlier, that he essentially withdraws those allegations and, unless the Court feels compelled to address them, that he really doesn't -

THE COURT: I do want to address them because I want Mr. Rogers to understand the entire history of this particular case.

I have had a transcript prepared of the proceedings that took place on March 21st. Specifically, let me read into the record what the written transcript contains. I'll pick up on page 1, line 13.

[The Court then read from the March 21, 1994 transcript]

THE COURT: ... Now, Mr. Rogers, your attorney has informed me that you wish to withdraw that letter that you sent that I went through. Do you have any questions you want to ask me about the letter that you originally wrote to the Court?

THE DEFENDANT: Not really any questions, other than 1 was obviously grossly misinformed.

THE COURT: Did Mr. Feldman give you that advice? Is that where you picked it up from?

THE DEFENDANT: Yes.

(Pause)

THE COURT: All right. Now the matter is here for resentencing. Again, I am not going to impose any restitution in this case, so it will not need Mr. Rogers to withdraw his previously-entered pleas.

All right, this is the date set for sentencing in this case. Is there any legal cause or reason why the Court should not proceed today?

MR. JAMES: No, your Honor.

THE COURT: Mr. James? Mr. Rogers?

THE DEFENDANT: No, your Honor.

Section 455 expressly contemplates that a party may waive an appearance of impropriety ground for disqualification if the waiver "is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). The discussion at the October 20, 1994, sentencing hearing leaves no doubt that such a disclosure occurred. On the record, Judge Tevrizian laid out the history and extent of his relationship with Bank of America and refuted the existence of the dinner party conversations asserted in Rogers' letter.

Following this disclosure, Rogers acknowledged that he wished to withdraw the assertions contained in the letter, stating that he

---

**2.** At this hearing, Judge Tevrizian took the opportunity to discuss the allegations contained in Rogers' March 11th letter. He also stated that the *Feldman* case referred to in Rogers' letter did not conclude that he was disqualified due to any conflict of interest. He also responded to the claims that he spoke with the prosecutors about Rogers' sentence at a dinner party. Judge Tevrizian asked the prosecutor if she had ever been to his house for a dinner party. Both the assistant United States attorney and Rogers' defense counsel stated that they had never attended a dinner party with Judge Tevrizian. The court then issued a bench warrant for Rogers' appearance. The warrant was executed on October 14, 1994, and Rogers was rescheduled for sentencing on October 20, 1994.

was "obviously grossly misinformed." In addition, when asked by the Court if there was any reason, legal or otherwise, why the Court should not resentence him, Rogers and his defense counsel both unequivocally responded, "No." Thus, not only did Rogers recant the assertions he made in his March 11th letter, and in effect withdraw his objections, but he also expressly approved of the district judge's continued service in this case. Rogers' election to proceed after this disclosure constitutes an effective waiver under § 455(e). *United States v. Nobel*, 696 F.2d 231, 237 (3d Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); *See Thomas v. United States*, 363 F.2d 849, 851 (9th Cir.1966); *Harris v. United States*, 338 F.2d 75, 79 (9th Cir.1964); *Neil v. United States*, 205 F.2d 121, 125 (9th Cir.1953).

■ Moreover, it is clear that Rogers was aware of the asserted grounds for Judge Tevrizian's disqualification as early as March 11, 1994. His failure to make any formal motion until more than one and one-half years after he was aware of the grounds for disqualification-and almost nine months after his resentencing-renders his motion untimely. *E. & J. Gallo*, 967 F.2d at 1295 (holding disqualification motion untimely when filed eight months after party knew grounds for disqualification and after adverse ruling); *Owens*, 902 F.2d at 1156 (defendant's post-sentencing disqualification motion filed four months after sentencing was untimely where facts supporting motion were known to defendant prior to sentencing); *see also Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989) (defendant's collateral challenge to the district judge's impartiality under § 455(a) was untimely when the opportunity to raise the issue existed at the time direct review was possible).

By the time of Rogers' resentencing in October of 1994, he was fully aware of the financial interest of Judge Tevrizian and of the ruling in *Feldman*. As previously noted, on March 11, 1994, Rogers wrote a letter to the probation office commenting on his pre-sentence report ("PSR"). Among the assertions in his letter, Rogers challenged the characterization of the Bank of America as a victim and requested that another judge be assigned to the case because of Judge Tevrizian's "relationship" to the bank and his purported bias. Rogers specifically noted the *Feldman* case and the subsequent removal of Judge Tevrizian from any further proceedings in that case.

At resentencing, Judge Tevrizian questioned Rogers on these allegations. Rogers' attorney represented to the court that Rogers wanted to withdraw the letter and the allegations contained therein. When specifically asked if he had any questions regarding the allegations that he wanted to ask the judge, Rogers stated that he did not have any questions and that he was "obviously grossly misinformed." The court then resentenced Rogers. He did not take a direct appeal challenging his sentence.

In these circumstances, Rogers cannot be permitted to sit back and take his chances at resentencing with Judge Tevrizian only to return several months later with his disqualification claims in the hope of obtaining a more favorable sentencing disposition before a different judge. *E. & J, Gallo*, 967 F.2d at 1295; *Branco*, 798 F.2d at 1304.

The case of *United States v. Branco*, 798 F.2d 1302, 1304-05 (9th Cir.1986), is instructive here. In *Branco*, the defendant, like Rogers, did not file a motion to disqualify until after he was sentenced. Although the information supporting the defendant's motion was known by the defendant well before the time he was sentenced, the defendant did not seek disqualification until he made a Rule 35 motion. Noting that disqualification motions made after judgement are generally considered untimely, we observed that "'[a] defendant cannot take his chances with a judge and then, if he thinks the sentence is too severe, secure a disqualification and a hearing before another judge.'" *Id.* at 1304 (citation and quotation omitted). We also noted that a delay in bringing a motion to disqualify may only be excused for good cause. We then noted that the fact that the defendant and his attorney discussed the recusal issue before sentencing, coupled with the fact the information supporting the motion was known to the defendant for some time before sentencing, defeated any good cause claim. *Id.* at 1305.

For these same reasons we conclude that Rogers has inexcusably delayed bringing his motion to disqualify. As in *Branco*, Rogers discussed the recusal issue not only with his attorney, but also with the district court and probation office at or before his resentencing. Similarly, Rogers' motion was based on information about Judge Tevrizian's financial interest in Bank of America-information that Rogers was aware of at least several months before his resentencing.[3] Accordingly, we conclude that his motion to disqualify was untimely. Rogers had an opportunity to move for disqualification at or before his resentencing. He specifically withdrew any request to do so. Thus, his belated attempt to seek disqualification is untimely.

**B. Disqualification on the Merits under § 455**

Even assuming that Rogers' disqualification motion was timely and not waived, these circumstances clearly do not require recusal. Section 455 of Title 28 of the United States Code provides in part:

(a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party ...;

 \* \* \* \* \* \*

(4) He knows that he, individually or as a fiduciary ... has a financial interest in the subject matter in controversy or in a party to the proceeding ...;

(e) No ... judge ... shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

Rogers argues that Judge Tevrizian's financial interest in the Bank of America warrants disqualification under § 455.[4] In denying the motion, Judge Gadbois stated that Rogers' argument was without merit because Judge Tevrizian did not own any interest in Bank of America at the time Rogers was initially sentenced. Because the court did not clearly identify under which section it analyzed Rogers' motion, we will look at both subsections.

By its terms § 455(a) mandates disqualification in a proceeding in which a judge's "impartiality might reasonably be questioned." *Id.* The Supreme Court has advised us that our analysis under subsection (a) requires an "evaluation on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance," *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 1153, 127 L.Ed.2d 474 (1994), and we have independently recognized that what is required "is a reasonable factual basis for doubting the judge's impartiality." *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir.) (quotation omitted), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Whether a judge's stock ownership in the victim of a crime requires disqualification under this section is a question that has split the two circuits that have addressed the issue.

In *United States v. Sellers*, 566 F.2d 884, 887 (4th Cir.1977), the issue was whether recusal under section 455(a) was required in a criminal case for bank robbery where the judge owned stock in the victim bank and his brother was the Chairman and CEO of the bank. The Fourth Circuit held that under these circumstances there was no "reasonable apprehension" that the judge would be partial. The court found that a stock ownership interest in the victim of a crime was an interest "so remote as to be for all practical purposes non-existent." *Id.*

In *United States v. Nobel*, 696 F.2d at 235-36, however, the Third Circuit came to the opposite conclusion. On similar facts to

---

**3.** In both this case and in *Branco,* the information relied upon to support the disqualification motion was found in a published judicial opinion.

**4.** Rogers' motion did not expressly state whether it sought the judge's disqualification under § 455(a) or § 455(b).

those found in *Sellers,* the court stated that in order to assure that the appearance of impartiality is maintained § 455(a) requires a judge who owns a "substantial interest" in the victim of the crime to disqualify him or herself. *Id. Nobel* did not further define "substantial interest."

In our view, the facts in this case do not appear to raise a reasonable question of impartiality. Judge Tevrizian, as one of millions of stockholders in Bank of America, held a limited financial interest in the purported victim of the crime. Moreover, following Rogers' initial appeal in this case, we ordered that if Rogers was resentenced he could not be ordered to pay any restitution. *Rogers,* 984 F.2d at 319. Clearly, the resentencing of Rogers could not have had any possible financial impact on the Bank of America.

Nor can it be reasonably argued that the Judge's stockholder status motivated him to treat Rogers differently or more harshly when imposing a custodial sentence. Initially, before he had obtained an interest in the victim bank, Judge Tevrizian sentenced Rogers to a total of eight years' imprisonment. When he resentenced Rogers after his bank interest developed, Judge Tevrizian imposed the same total term of imprisonment-eight years. In both instances, the sentence was below the ten-year sentence recommended by the probation office. This consistent and lenient application of discretionary sentencing power does not raise a reasonable question of impartiality. Moreover, there was no trial in this case; Rogers admitted his participation in the charged fraud and pled guilty to the counts of conviction. No reasonable person with knowledge of all these facts would objectively conclude that the judge's impartiality might reasonably be questioned.

■ Similarly, there is no merit to any argument that recusal was required under 28 U.S.C. § 455(b)(4). This section requires disqualification when the judge, the judge's spouse, or the judge's minor child has a financial interest "in the subject matter in controversy or in a party to the proceeding." The victim of a crime is not a party under this section. *See Sellers,* 566 F.2d at 887. The only parties in a federal criminal case are the named defendant and the United States. In addition, stock ownership in the corporate victim of a crime cannot be deemed a financial interest in the subject matter in controversy. *See Nobel,* 696 F.2d at 235. Therefore, Judge Tevrizian's recusal was not required under § 455(b)(4). Accordingly, the district court did not abuse its discretion when it denied Rogers' motion to disqualify.

### C. Was Recusal Required Under *Feldman?*

■ Rogers also argues that our disqualification of Judge Tevrizian in the *Feldman* case should be considered the "law of the case" and, therefore, mandates Judge Tevrizian's recusal in this instance. As we recently stated, " '[t]he law of the case doctrine provides that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.' " *United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995) (quotation omitted). This doctrine, however, " 'clearly does not extend to issues an appellate court did not address.' " *Id.* (quotation omitted).

In *Feldman,* we ruled only on the issue of recusal that specifically applied to that proceeding-Feldman's resentencing. 983 F.2d at 145. The ruling did not state that Judge Tevrizian was disqualified from all matters involving Bank of America as a victim, especially not one with a different defendant. In addition, *Feldman* focused on the issue of restitution as the factor that might create a question of partiality. That issue is notably absent in Rogers. Before Rogers was resentenced we had already ruled that restitution was not available. Facts and issues that exist as to Rogers were not before the court in *Feldman.* As such, *Feldman* does not establish the law of the case in Rogers' proceedings.

### II. Factual Objections under Fed.R.Crim.P. 32(c)(3)(D).

■ In his Rule 35 motion, Rogers argues that the district court failed to comply with Fed.R.Crim.P. 32(c)(3)(D) by not resolv-

ing his objections to the PSR.[5] This argument is without merit. Rule 32(c)(3)(D) requires the district court to resolve and make a finding regarding any factual disputes or objections the defendant raises regarding the PSR.

Arguably, Rogers objected to the PSR's characterization of the Bank of America as the victim of the crime and the computation of the loss it suffered. At the sentencing hearing, the district court stated as follows:

> THE COURT: Here's what I'm going to do. That sentence on page 17 of the probation report will be changed by the Probation Department to read as follows:
>
> "Although an exact amount of loss cannot be determined at this time, the documents from the Bank of America show that the bank has suffered a loss."

In ordering this amendment to the PSR, the district court necessarily complied with Rule 32(c)(3)(D) and resolved Rogers' factual objection that the bank was not a victim. Implicit in the amending language is the determination by the district court that, despite Rogers' objections, the bank was indeed a victim but that the loss was undetermined. Accordingly, because the district court complied with Rule 32(c)(3)(D), we affirm the district court's denial of Rogers' Rule 35 motion.

## CONCLUSION

Because the district court correctly denied Rogers' Rule 35 motion and did not abuse its discretion when it denied Rogers' motion to disqualify, the orders of the district court are hereby AFFIRMED.

---

**5.** The versions of Fed R.Crim. P. 32 & 35 that apply to this case are the pre-guidelines versions applicable to offenses committed before November 1, 1987.