UNITED STATES of America, Plaintiff—Appellee,

v.

Stuart H. WOLFF, Defendant—Appellant.

No. 06–50683.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 2007.

Filed Jan. 14, 2008.

Michael R. Wilner, Esq., USLA–Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Lawrence S. Robbins, Esq., Robbins, Russell, Englert, Orseck and Untereiner, E. Lawrence Barcella, Jr., Paul Hastings Janofsky & Walker, LLP, Washington, DC, Howard M. Privette, Esq., Paul Hastings Janofsky & Walker, LLP, Los Angeles, CA, for Defendant–Appellant.

* The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

Before: FERNANDEZ and WARDLAW, Circuit Judges, and MILLS, District Judge.*

## MEMORANDUM **

An indictment charged Stuart H. Wolff in connection with a corporate fraud scheme involving the inflating of his company's publicly reported revenue figures. He was convicted on all eighteen counts. Wolff raises several issues on appeal, including his assertion that the district judge was required to recuse himself because he owned stock in a company that was connected to the scheme. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the motion for the district judge's recusal should have been granted, we vacate the conviction and sentence, and remand.

### I.

In 2001, Wolff was Chief Executive Officer and Chairman of the Board of Directors for Homestore.com, Inc. Wolff, along with co-defendant and former Homestore Executive Vice President Peter Tafeen, who eventually pled guilty to insider trading charges, and other corporate officers and employees were accused of engaging in a lengthy scheme to inflate Homestore's publicly reported revenue figures. Specifically, Wolff was charged with one count of conspiracy to (i) commit securities fraud; (ii) file false reports with the United States Securities and Exchange Commission ("SEC"); (iii) falsify Homestore's books and records; and (iv) make false statements to Homestore's auditor, in violation of 18 U.S.C. § 371; three counts of filing false quarterly reports with the SEC, in violation of 15 U.S.C. §§ 78m(a)(2)

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

and 78ff(a); five counts of falsifying corporate books and records, in violation of 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff(a), and 17 C.F.R. § 240.13b2–1; four counts of lying to accountants, in violation of 15 U.S.C. §§ 78m(b)(2)(B) and 78ff(a), and 17 C.F.R. § 240.13b2–2; and five counts of insider trading, in violation of 15 U.S.C. §§ 78j(b).

Wolff was convicted on all counts and sentenced to serve a total of fifteen years imprisonment, a three-year term of supervised release, and to pay a $5 million fine. He was further ordered to pay $8,638,106 restitution to shareholder-victims identified in a related class action lawsuit.

This case arose from what the Government termed "triangular" deals that Homestore executed during the first three quarters of 2001. Homestore would purchase goods or services from a third-party vendor (the "first leg"); the vendor, in turn, made a purchase—typically, Internet advertising—from a counter-party (the "second leg"); and the counter-party then placed other companies' advertising on Homestore's web sites, deducted its commission, and paid Homestore the remaining revenues (the "third leg"). The indictment alleged that Homestore should not have recognized revenue on any of these transactions.

Homestore reported the amount received from the third leg as "revenue" on its financial statements. The Government charged 23 such transactions, involving approximately $67 million in revenue. The indictment alleged that America Online ("AOL") served as the counter-party in seventeen of those transactions. In the first quarter of 2001, Homestore was alleged to have engaged in "at least seven fraudulent roundtrip transactions with AOL as intermediary, as a result of which Homestore fraudulently recorded approximately $15,000,000 in advertising revenue."

In the second quarter, Homestore and AOL completed ten such deals, which yielded approximately $21.75 million in revenue. There was testimony at trial that AOL received approximately $8 or $9 million from second quarter deals.

During a pretrial hearing, the district court judge, Judge Anderson, informed counsel that he "owns stock in AOL." He did not specify the date(s) of purchase, the amount held, or whether he had engaged in any subsequent transactions involving the stock. In August 2005, Tafeen (who was then Wolff's co-defendant) subpoenaed documents from AOL, and AOL moved to quash. Judge Anderson recused himself from deciding that motion, declaring that he had a "financial interest in AOL," and the motion was assigned to Judge John F. Walter for disposition.

On November 1, 2005, Wolff moved under 28 U.S.C. § 455 to disqualify Judge Anderson from the case. Pursuant to the local rules for the Central District of California, that motion was also referred to Judge Walter. On November 7, Judge Walter denied the motion, stating that (1) Judge Anderson's recusal from deciding AOL's motion to quash was "insufficient to demonstrate that Judge Anderson has a 'financial interest in the subject matter in controversy;'" and (2) "Defendant's claim that AOL is 'a potential unindicted co-conspirator in this case' is equally insufficient to establish that Judge Anderson has a 'financial interest in the subject matter in controversy.'"

## II.

The denial of a motion to recuse a judge for a financial conflict of interest is reviewed for abuse of discretion. *See Mangini v. United States,* 314 F.3d 1158, 1161 (9th Cir.2003). Twenty-eight U.S.C. § 455(b)(4) provides that a judge "shall

... disqualify himself [where] ... [h]e knows that he ... has a financial interest in the subject matter in controversy...." A "financial interest" includes "ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4). The reasoning of the "victim" cases is not directly on point with this case. In *United States v. Rogers*, 119 F.3d 1377 (9th Cir.1997), we held that although the judge, "as one of millions of stockholders in Bank of America, held a limited financial interest in the purported victim of a crime," it "cannot be deemed a financial interest in the subject matter in controversy." *Id.* at 1384. We observed that the sentencing of Rogers "could not have had any possible financial impact on the Bank of America." *Id.* In this case, the judge's rulings could potentially have had a financial impact on AOL.

There is no dispute that Judge Anderson's ownership of AOL stock constitutes the requisite "financial interest;" the only question is whether it is an interest "in the subject matter in controversy." Based on the unique facts that are before us, we conclude that the judge did have a financial interest in the subject matter in controversy under section 455(b)(4). Accordingly, Judge Walter erred in denying Wolff's disqualification motion.

There are several factors on which we base our conclusion. We note that the Government suggested that AOL employees were unindicted co-conspirators. In a letter to Wolff's counsel, one of the prosecutors stated, "I did not say that AOL was a co-conspirator, but rather I said an argument could be made under the principles of corporate criminal liability. At this time, the government declines to specify who else at AOL may or may not be a co-conspirator." Moreover, the "triangular" deals were designed by AOL senior executive Eric Keller. In addition, the Government argued that AOL's firing of Keller proved guilty knowledge on Wolff's part

when one of the prosecutors stated, "[I]f the chief architect from the AOL side of these deals was replaced for misconduct, that goes directly to [Wolff's] state of mind as to the propriety of these transactions." We note, moreover, that Wolff's trial included testimony from four AOL officials. Several other witnesses, including the Government's three key cooperating witnesses, in addition to Wolff, testified in detail regarding direct dealings with AOL.

On December 15, 2004, a criminal complaint was filed against AOL—which was stayed under a Deferred Prosecution Agreement ("DPA")—regarding AOL's participation in at least one of the transactions charged in Wolff's indictment. *United States v. America Online, Inc.*, No. 1:04–mj–01133 (E.D.Va.); compare *id.* (describing "secret side agreements" pursuant to which third parties brought software from a company known as Purchase-Pro in exchange for "sweeteners" from AOL), with (Indictment) (charging $3.7 million Homestore–AOL–PurchasePro transaction in Q1 2001). The DPA required AOL to pay $210 million in compensation and fines.

The SEC charged AOL's successor corporation with fraud for its role in the Homestore transactions. According to the SEC, AOL aided and abetted securities fraud by Homestore and "improperly inflated its online advertising revenue based on the Homestore-related transactions by at least $1.5 million in the fourth quarter of 2000 and $7 million in the first quarter of 2001." AOL has also been forced to defend itself in private litigation—specifically a civil suit filed by the California State Teachers Retirement System and a class of Homestore shareholders against AOL, Homestore, Wolff, and other entities and individuals, all arising from the factual issues at the core of this prosecution. We note that the plaintiffs requested leave to amend their complaint to take account of

"the trial testimony of Defendant Stuart H. Wolff and others in the related criminal trial where Wolff was found guilty of 18 counts relating to the Homestore fraud."

Based on our review of the record, we conclude that Judge Anderson's ownership of AOL stock constituted a "financial interest in the subject matter in controversy," in violation of 28 U.S.C. § 455(b)(4). We therefore conclude that Judge Walter abused his discretion by denying Wolff' s motion to disqualify Judge Anderson.

We need not reach the remaining issues raised by Wolff on appeal. The judgment of the district court is **vacated** and the case is hereby **remanded** to the district court. The Clerk of the Court for the Central District of California is directed to assign this case to a different judge upon remand.

**VACATED and REMANDED.**

---

* This disposition is not appropriate for publication and is not precedent except as provided

by 9th Cir. R. 36–3.