**UNITED STATES of America, Appellee,**

v.

**Charles Alton SELLERS, Jr., Appellant.**

**No. 76–2262.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 12, 1977.
Decided Nov. 30, 1977.

Will T. Dunn, Jr., Greenville, S.C., for appellant.

Donald A. Harper, Asst. U. S. Atty. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S.C., on brief), for appellee.

Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

Charles Alton Sellers, Jr., appeals from a judgment convicting him of bank robbery. He complains that the district court improperly excluded testimony proffered by his expert witness while allowing essentially similar testimony by the government's expert. He also contends that the court erred by denying his motion for a new trial in which he alleged that the judge ought to have disqualified himself from trying the case. We vacate and remand because of the limitation the court placed on the testimony of the defendant's expert.

I

The man who robbed the bank was disguised with sunglasses, beard, and wig. Although circumstantial evidence implicated Sellers, no eye witness could identify him as the bandit. Surveillance cameras in the bank recorded several side and frontal

views of the robber. Since the government contended that Sellers acted alone, proof that he was the man in the photographs was critical.

The court permitted the defendant's expert in photo comparison to express his opinion about the differences between Sellers' features and those of the person in the surveillance photographs. It, however, excluded from the jury the expert's conclusion that Sellers was not the person shown in the photographs.

On rebuttal, the court permitted the government's expert to explain the difficulties of making photographic comparisons because of variations in lenses, perspective, light, and development paper. Far more importantly, it also allowed him to express his conclusion that identification of the bandit by these particular photographs was impossible.

■ Expert testimony in cases such as this may assist the jury's evaluation of photographs by explaining the effects of light, shadow, and reflections, and the distortion caused by the perspective of the picture, and other technical factors. The expert, using enlargements if needed, may also point out to the jury similarities or differences between the features of the defendant and those of the person shown in the photograph. This testimony may be admissible. *Fed.R.Evid.* 702, 703; see *United States v. Green*, 525 F.2d 386, 391 (8th Cir. 1975).

■ When testimony to assist the jury in identifying a bandit by the use of surveillance photography is admissible, we assume the expert may also be allowed to express his opinion as to whether the defendant is the person in the picture. Such an opinion

is not necessarily objectionable for the reason that it may speak to the ultimate issue. *Fed.R.Evid.* 704. In this case, we assume the opinions of both experts, including their conclusions concerning the identification of Sellers by the photographs, were admissible.[1] The witnesses fully disclosed the reasons for their opinions. The government argues, however, that the conclusion to be drawn from the testimony of Sellers' expert witness was obvious, and that consequently the exclusion of the statement of his opinion that Sellers was not the man in the photograph was harmless. We find this argument unpersuasive.

■ Rule 403 gives a trial court discretion to exclude relevant evidence that wastes time, or is cumulative, or too prejudicial, and the like, and this, of course, includes expert testimony. Under different circumstances, Rule 403 might sustain the ruling of the district court. But this rule may not be utilized to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue. The discretion allowed by Rule 403 must be applied evenhandedly. We hold, therefore, that the district court erred in that it abused its discretion in not permitting the defendant's expert to testify that in his opinion the photographs showed Sellers was not the bandit, while permitting the government's expert to express his opinion that it was impossible to determine from the photographs whether Sellers was the bandit.

## II

■ Sellers also assigns error to the denial of his motion for a new trial in which he

---

1. No question is raised here as to the admissibility of the evidence of the government expert and whether or not he should have been allowed to express his opinion that it was impossible to determine from the photographs whether Sellers was the bandit. We express no opinion on that question, and note that the test in the Advisory Committee's Note to Rule 702, in ascertaining whether or not an expert should be allowed to testify as to a particular conclusion, is as follows: "There is no more

certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." For a discussion of the problem with respect to photographic evidence, see *United States v. Green*, supra, and *United States v. Brown*, 501 F.2d 146 (9th Cir. 1974).

contended that the interest of the district judge and his family in the bank disqualified him. At the hearing on the motion, the judge observed that it would be well to place this issue before the court of appeals. In the order denying the motion, he commendably described in detail his financial interest in the bank to facilitate our consideration of the question. The order discloses that a holding company owns all of the bank's stock, and the judge and his family, individually or as trustees, have an interest in this company amounting to less than one percent of the issued and outstanding stock. The judge and his children, at the time of the trial, held less than ⅕th of 1% of the stock, and at the time of denial of the motion to set the verdict aside, less than ⅖ths of 1% of the stock. His brother is chairman of the board of directors and chief executive officer of the bank and its holding company.

The trial judge noted that he always disqualifies himself in civil cases in which the bank is a party, but that this was the first case to come before him involving a robbery of the bank. He concluded that ownership of stock in a bank should not prevent a judge from trying a person charged with robbing the bank, because the bank is not a party, and neither it nor any stockholder has a financial stake in the outcome of the case.

We have considered the merits of the question of the disqualification of the judge because of our decision to remand the case for a new trial.

Prior to its amendment in 1974, 28 U.S.C. § 455 had been construed to leave to the "conscience of the particular judge" whether he would try a person accused of robbing a bank in which the judge held stock. *United States v. Ravich*, 421 F.2d 1196, 1205 (2d Cir. 1970). *Ravich* held the interest of the judge in the case was "nonexistent." The 1974 revision was designed to eliminate a subjective test, and removed "in his opinion" from the statute. The statute now provides that a judge "shall disqualify himself in any proceeding in which his impar-

tiality might reasonably be questioned." 28 U.S.C. § 455. This is described as an objective standard in the House Report mentioned just below. The legislative history indicates that the new objective test was intended to end the "duty to sit" construction the former statute had received. *H.R. Rep. No.* 93–1453, 93d Cong., 2d Sess., reprinted in *U.S.Code Cong. & Admin.News*, 93d Cong., 2d Session, pp. 6351, 6354–55. Thus, we are now required to assess "all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." *H.R. Rep. No.* 93–1453, supra, reprinted at 6355. *Davis v. Board of School Comm'rs.*, 517 F.2d 1044, 1052 (5th Cir. 1975).

We hold that the trial court did not abuse its discretion. "Disqualification for lack of discretion must have a *reasonable* basis," (italics are those of the House), and we can find on this record no "reasonable factual basis for doubting the judge's impartiality." *H.R. Rep. No.* 93–1453, reprinted at 6355. No reason appears why owning stock in a holding company owning a bank that is robbed would lead to any reasonable apprehension that the stockholder judge would be partial. Neither the bank nor its parent company are parties to the case,[2] and we find that any interest the judge might possibly have in the case is so remote as to be for all practical purposes non-existent. *Ravich*, supra. The business duties of his brother should likewise cause no " 'reasonable fear' that the judge will not be impartial." *H.R.Rep. No.* 93–1453, supra, reported at 6355.

The judgment of conviction is vacated and the case remanded for a new trial because of the erroneous exclusion of evidence.

*VACATED and REMANDED.*

BUTZNER, Circuit Judge, concurring in part and dissenting in part:

I concur in Part I of the court's opinion, agreeing that a new trial must be granted because of the erroneous exclusion of evidence.

2. Were they parties, of course, § 455(b)(4) would require disqualification.

I dissent from Part II because I think that the retrial of the defendant should be conducted by a judge who is not so intimately connected with the victim of the robbery.

The government recognizes that if this were a civil case in which the bank was a party, the trial judge would have to disqualify himself even though the effect on his holdings would be so insignificant that it could not be measured.[3] Nevertheless, it argues that disqualification is not necessary because the bank, although the victim of the crime, was not a party to the proceedings, and its shareholders were not financially affected by the outcome of the trial. I believe that the decisive significance the government assigns to these two factors is unwarranted by the statute governing the disqualification of judges and the Code of Judicial Conduct adopted by the Judicial Conference of the United States.

*United States v. Ravich*, 421 F.2d 1196, 1205 (2d Cir. 1970), on which the government relies, is no longer persuasive. The 1974 amendment to 28 U.S.C. § 455 eliminated the subjective test which left the decision of disqualification when a judge held stock in a robbed bank to "the conscience of the particular judge." The amended statute, 28 U.S.C. § 455(a) provides:

Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The Code of Judicial Conduct contains a similar provision, and neither the code nor the statute conditions disqualification on proof of financial interest in a party to the proceedings. Indeed, the code emphasizes

that disqualification is not limited to instances where the judge or a member of his family has such an interest.[4]

Commenting on subsection (a) of the amended statute, the Report of the House Committee on the Judiciary states:

This sets up an objective standard, rather than the subjective standard set forth in the existing statute through use of the phrase "in his opinion". This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case.[5]

This legislative history indicates that it is unnecessary to show that the judge is actually biased. The test is whether there is a "reasonable factual basis for doubting the judge's impartiality." I believe that a basis for such a *doubt* is established by showing that the judge has a substantial financial interest in the bank which has been robbed and that his brother is chief executive officer of the institution. It is reasonable to conclude that any person who has substantial holdings in a bank that is the victim of a robbery has an interest that is different from that of the general public in seeing the criminal convicted.[6] These feelings are apt to be intensified when the stockholder's brother is ultimately responsible for the security of the institution and the safety of its employees. Such a stockholder, I dare say, would be disqualified to sit as a juror in most courts.

A detached observer, I believe, could reasonably question whether a judge so closely linked to the victim could maintain impar-

---

3. *See* 28 U.S.C. § 455(b)(4) and (5); Code of Judicial Conduct for United States Judges, Canon 3 C(1)(c) and (d).

4. Code of Judicial Conduct for United States Judges, Canon 3 C(1) provides in part:
   A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: [he or a member of his family has an interest in a party to the proceedings. Canon 3 C(1)(c) and (d)]

5. H.R. Rep. No. 93–1453, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6351, 6354–55.

6. In my view there is no justification for drawing a distinction between a judge's ownership of stock in a bank holding company, which in turn owns all of the bank's stock, and his ownership of bank stock.

tiality. It might well be difficult for the judge to hold a neutral stance, especially when the testimony of officers and employees, who are under the direct supervision of his brother, conflicts with other evidence. Indeed, a conscientious judge might unwittingly bend over backwards to favor the accused so that his conduct would be above reproach. But partiality for the accused must be avoided just as surely as bias against him.

At the risk of being repetitious, it is well to emphasize that the amended statute and the code do not call for inquiry into a judge's subjective feelings. We are not concerned in this case with examining the attitude of the judge who tried this case. Instead, our obligation is to provide an objective appraisal that can be applied uniformly to all judges throughout the circuit. I therefore conclude that a judge should disqualify himself in criminal cases involving a bank in which he or a member of his immediate family is a stockholder or officer. He should apply the same salutary practice that the statute and code require him to apply in civil cases. In both instances disqualification will enhance confidence in the administration of justice.