UNITED STATES, Appellee,

v.

Specialist Robert E. REED, United States Army, Appellant.

ARMY 9901070.

U.S. Army Court of Criminal Appeals.

29 June 2001.

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Captain Jimmonique R. Simpson, JA (on brief).

For Appellee: Colonel David L. Hayden, JA; Lieutenant Colonel Edith M. Rob, JA; Major Daniel G. Brookhart, JA; Captain Steven D. Bryant, JA (on brief).

Before CAIRNS, BROWN, and VOWELL, Appellate Military Judges.

OPINION OF THE COURT

CAIRNS, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of conspiracy to commit larceny, conspiracy to commit willful and wrongful damage to nonmilitary property, and larceny of currency of a value of more than $100.00, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 [hereinafter UCMJ]. In accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, twelve months of the adjudged sixteen months of confinement, and reduction to Private E1.

The appellant assigned one error in this Article 66(c), UCMJ, 10 U.S.C. § 866, appeal:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO TIMELY DISCLOSE HIS FINANCIAL INTEREST AS A POLICYHOLDER IN USAA[1] UNTIL AFTER FINDINGS WERE ENTERED WHERE USAA WAS A VICTIM OF TWO OF THE THREE CHARGED OFFENSES AND A MAJOR THRUST OF THE GOVERNMENT'S SENTENCING CASE WAS THE IMPACT OF APPELLANT'S ACTIONS ON THE MEMBERS/POLICYHOLDERS OF USAA.

Finding no error prejudicial to the appellant's substantial rights, we resolve the assigned error against the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a).

### Background

While assigned in Germany, the appellant participated in an insurance fraud scheme with a local national. As the appellant admitted during the guilty plea inquiry and in a stipulation of fact, he conspired with an automobile body shop owner to vandalize the appellant's car for the purpose of making a false claim against his automobile insurer, USAA, so that he could pay to refinish his entire car. In furtherance of the conspiracy, they scratched a Nazi swastika, a Nazi "SS," and an anti-American obscenity into the paint surface. After USAA discounted the amount claimed because of preexisting damage for which the company had previously paid a claim, they paid the appellant 2,700 German marks (approximately $1,400). Subsequently, the appellant agreed to help the body shop owner scratch automobiles owned by soldiers who lived in the appellant's housing area. Under the agreement, the appellant was to recommend the body shop to the victimized soldiers in exchange for the body shop owner completing the work on the appellant's car.[2]

During the sentencing phase of the trial, the government elicited testimony from Mr. Mueller, a "claims handler" for USAA, who testified that fraudulent claims increased company expenses and impaired its competitive advantage. Mr. Mueller further explained that USAA is a member-owned company, and fraudulent claims could lower members' dividends and increase rates. He testified that in the previous year, fraudulent claims cost the company about twenty-five million dollars.

Immediately following Mr. Mueller's testimony, the military judge disclosed that he had been a USAA policyholder for about eighteen years and invited counsel to conduct voir dire on the issue. The military judge stated that he did not feel he was in any way a victim of the appellant's crimes, and he assured the parties that his "status as a USAA policyholder [would] have no [a]ffect upon [his] determination of a fair and appropriate sentence or the findings" he had previously entered. The defense counsel and trial counsel declined to challenge the military judge based on his status as a policyholder with USAA.

In closing arguments on sentencing, the trial counsel suggested a sentence of a dishonorable discharge, confinement for three years, total forfeitures, and reduction to the lowest enlisted grade. In support of the suggested sentence, the trial counsel concentrated his argument on the nature of the appellant's crimes, including the use of abhorrent symbols and the staged anti-American vandalism for personal gain, the appellant's premeditated greed, the damages to his fellow soldiers and the community, and the conspiratorial nature of his crimes. The trial counsel also asked the military judge to consider the impact of the appellant's crimes on the policy-holders of USAA by asserting that "every member's dividend was reduced in some small degree by this offense."

---

1. United Services Automobile Association [hereinafter USAA].

2. Although the body shop owner pressured the appellant to join in this subsequent scheme to damage the appellant's neighbors' cars, the military judge properly ensured that the coercion did not amount to a defense.

## Discussion

Rule for Courts–Martial 902(a) [hereinafter R.C.M.] provides that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Rule for Court Martial 902(b) enumerates specific grounds upon which a military judge shall self-disqualify, including when the military judge, or a member of his or her family, "[i]s known by the military judge to have an interest, financial or otherwise, that could be substantially affected by the outcome of the proceeding." Under R.C.M. 902(e), military judges are precluded from accepting a waiver of any ground for disqualification under subsection (b), but "[w]here the ground for disqualification arises only under subsection (a) of this rule, waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." The discussion sections under R.C.M. 902 state that military judges should inform themselves about their financial interests and that the participants at trial should raise possible grounds for disqualification at the earliest reasonable opportunity.

As admitted in his brief, the "[a]ppellant does not argue that any trial judge who is a USAA policyholder is automatically disqualified [from a case such as this] solely because of this status." Instead, the appellant's assignment of error focuses on the military judge's failure to timely disclose his status as a USAA policyholder and his alleged failure to fully disclose his financial interest.

█ As for the timing of the military judge's disclosure, we find nothing improper or erroneous by this military judge's failure to disclose his policyholder status until a potential ground for his disqualification unfolded with the government's presentation of Mr. Mueller's testimony. Until then, the impact of the appellant's crimes upon USAA members was not an apparent issue. We seriously doubt that most military judges would identify this as a potential issue based solely on the charges and the matters presented during the guilty plea inquiry.[3]

In any event, we see no prejudice to the appellant in the military judge's timing of his disclosure. The military judge provided the opportunity to conduct voir dire, and the trial defense counsel exercised it. The military judge offered the appellant the opportunity

---

3. Likewise, we acknowledge and disclose that each of us assigned to this case is a policyholder of USAA, as are all the judges of our court. Rule for Courts Martial 902 governs our disqualifications in proceedings, just as it does for trial judges. *See* R.C.M. 902(c)(1) (" 'Proceeding' includes pretrial, trial, post-trial, *appellate review*, and other stages of litigation." (emphasis added)); *see also* 28 U.S.C. § 455(a) (explicitly governing "[a]ny *justice*, judge, or magistrate" (emphasis added)). Rule for Court Martial 902(a) was patterned after 28 U.S.C. § 455(a). We further acknowledge that, as a general matter, we have an interest in procuring adequate and responsive insurance coverage at reasonable rates. USAA's overall loss experience on automobile policies inevitably impacts future rate structures. Additionally, we disclose that USAA annually decides whether to return a portion of excess company reserves and paid automobile premiums to policyholders-and, if so, how much. First, each policyholder has a "subscriber savings account," and USAA distributed 16%, 7%, and 3% of individual subscriber savings account holdings in 1998, 1999, and 2000, respectively. Second, each automobile policyholder with no "at fault" claims may receive an automobile insurance dividend. Dividend distributions were made at rates of 12%, 5%, and 0% of premiums in 1998, 1999, and 2000, respectively. Considering the number of policyholders and the amount of the insurance fraud in this case, the financial impact to us cannot be more than a very small fraction of a penny. Therefore, we conclude that we have no financial interest "that could be *substantially* affected by the outcome of the [appellant's] proceeding." R.C.M. 902(b)(5)(B) (emphasis added). We categorically state that our association with USAA has not and will not compromise our impartiality. Likewise, we are satisfied that the *impact of the appellant's misconduct on the net* cost of our insurance is so attenuated and miniscule that our impartiality could not reasonably be questioned by informed observers. R.C.M. 902(a). It occurred to us to make this disclosure after reading the record and briefs and reflecting on the unusual issues presented by this case. The appellate defense counsel, who may themselves be members of USAA, have neither asked if any member of our panel is a member of USAA nor requested us to recuse ourselves if we were. Our sua sponte disclosure reflects, we think, the reality of the military judge's thought process at the appellant's trial-that his status would have absolutely no impact on his ability to decide the case fairly and with complete impartiality; therefore, the issue of disclosure did not enter his mind until the testimony of Mr. Mueller brought the issue into focus.

to challenge him for cause, but the appellant declined. We infer that the trial defense counsel's decision not to challenge the military judge reflected his satisfaction that the military judge's impartiality was not compromised by his policyholder status. *See United States v. Burton,* 52 M.J. 223, 226 (2000); *see generally United States v. Hill,* 45 M.J. 245, 249 (1996).

■ The remaining issues presented by this case are whether the military judge's policyholder status constituted a nonwaivable disqualification under R.C.M. 902(b)(5) because he had a financial interest that "could be substantially affected by the outcome of the proceeding"; and, if not, whether the military judge abused his discretion by not disqualifying himself under R.C.M. 902(a) because his "impartiality might reasonably be questioned." Although we find no military cases directly on point, the federal circuits provide instructive secondary authority, particularly because they apply the federal statute upon which R.C.M. 902 was based.[4] *Manual for Courts–Martial, United States* (1998 ed.), R.C.M. 902 analysis, app. 21, at A21–49.

To the extent that the military judge enjoyed any financial interests in USAA, they were limited to his interests in minimizing his insurance rates and maximizing his dividends. Common sense dictates, however, that such indirect interests would not be substantially affected by the outcome of this criminal case. As this was a criminal trial conducted under the UCMJ, the military judge had no authority to enter a civil judgment against a party or to order restitution. *See* R.C.M. 201(a)(1) discussion. We perceive no way in which the outcome of this court-martial could directly impact the financial interests of USAA or its members. To the extent that the outcome of this trial might have some deterrent effect on others who may be inclined to defraud USAA, we conclude that such a connection to the mili-

tary judge's financial interests is tenuous and remote. Certainly, the outcome of this trial would not *substantially* affect the military judge's financial interests, which is the standard for disqualification under R.C.M. 902(b)(5).

The federal courts have reached similar conclusions in criminal cases in which the judge's financial interests were far more substantial and direct. *See United States v. Aragon,* No. 99–50341, 2000 WL 868566, 2000 U.S.App. LEXIS 15423 (9th Cir. June 29, 2000) (unpub.) (the judge owned debentures in a bank defrauded of approximately $60,000 by the accused); *United States v. Rogers,* 119 F.3d 1377 (9th Cir.1997) (the judge owned stock in a bank defrauded of $70,000,000 by the accused); *United States v. Nobel,* 696 F.2d 231 (3d Cir.1982) (the judge was a "substantial stockholder" of an insurance company defrauded of approximately $476,000 by the accused).

These federal cases held that the judges were not disqualified under 28 U.S.C. § 455(b)(4) because the defrauded institutions were not parties to the trials, the judges did not have financial interests "in the subject matter in controversy," and the judges' interests were not interests which could be substantially affected by the outcome of the proceedings. They also addressed whether the judges should have disqualified themselves under 28 U.S.C. § 455(a) on the basis that their impartiality might reasonably have been questioned. On this issue, the circuits are not unanimous, although the weight of authority favors the conclusion that the judges did not abuse their discretion in not disqualifying themselves.[5]

The circuit courts cite several factors in reaching the conclusion that the judges' impartiality could not be reasonably questioned. First, the financial institutions are not parties to the trial. *U.S. v. Sellers,* 566 F.2d 884, 887 (4th Cir.1977). Second, there is no

---

4. Specifically, the provisions of R.C.M. 902(a) are substantively similar to 28 U.S.C. § 455(a), and R.C.M. 902(b)(5) parallels 28 U.S.C. § 455(b)(4).

5. *But see Nobel,* 696 F.2d at 235–36 ("We adopt the view that a judge who owns a *substantial*

interest in the victim of a crime must disqualify himself or herself in the subsequent criminal proceeding because the strict overarching standard imposed by section 455(a) requires that the appearance of impartiality be maintained." (emphasis added)).

apparent reason why a judge's ownership of the stock of a victim financial institution, by itself, would lead to a conclusion that a judge would be partial in a criminal trial. *Id.* Third, and most compelling, any financial interest the judge had in the victim financial institution was so remote or miniscule, in relationship to the financial size of the institution, as to be nonexistent. *United States v. Hooper*, No. 00–4188, 2000 WL 1208187, at *1, 2000 U.S.App. LEXIS 21630, at *2 (4th Cir. Aug. 25, 2000) (unpub.); *Aragon*, 2000 WL 868566, at *1, 2000 U.S.App. LEXIS 15423, at *4; *Rogers*, 119 F.3d at 1384; *Sellers*, 566 F.2d at 887. Of course, whether the judge's interests are insubstantial and/or remote are factual questions affecting whether his or her impartiality reasonably may be questioned.

█ We judicially note that the military judge in this case was one of 4.3 million members of USAA, a company with sixty billion dollars in assets.[6] The outcome of this case had no demonstrable or direct financial effect on USAA or its members. Whatever potential or consequential effect the case might have on their financial interests because of deterrence can be likened to a ripple in a great sea of financial currents. In the context of the circumstances of this case, we choose to follow the majority of the federal courts in concluding that the military judge's financial interests as a member of USAA were so remote and insubstantial as to be essentially nonexistent. We hold that his interests could not reasonably be affected by the outcome of the trial under R.C.M. 902(b)(5).[7] We decline to apply waiver by the appellant of the R.C.M. 902(a) basis for disqualification, but hold that there was no reasonable basis for questioning the military judge's impartiality under R.C.M. 902(a).[8]

We have considered the matters raised personally by the appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they do not warrant relief.

The findings of guilty and the sentence are affirmed.

Judge BROWN and Judge VOWELL concur.

---

6. *See* https://www.usaa.com/cp—aboutusaa.asp.

7. In his brief, the appellant asserts that the military judge did not make full disclosure of his financial interest in USAA, and as a result of his failure "there is no way for this Court to determine if the trial judge had sufficient financial or other interest requiring disqualification." While we agree that the military judge did not disclose the dividend distributions described above, we find this oversight insignificant and disagree that it affected the court's ability to analyze the military judge's potential disqualification under R.C.M. 902.

8. By declining to challenge the military judge for cause after his disclosure of his policyholder status, the trial defense counsel may have waived the issue of the military judge's disqualification under R.C.M. 902(a). However, we are reluctant to apply waiver without addressing the underlying substantive challenge to the military judge's impartiality.