**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4510

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHARISE SHANELL STONE, a/k/a Charise Stone Crumbly,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:14-cr-00127-CMH-1)

Argued: March 24, 2017                                    Decided: August 2, 2017

Before WILKINSON, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:** Alan Hideto Yamamoto, Alexandria, Virginia, for Appellant. Elissa Hart-Mahan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Caroline D. Ciraolo, Acting Assistant Attorney General, S. Robert Lyons, Acting Chief, Criminal Appeals & Tax Enforcement Policy Section, Gregory Victor Davis, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

AGEE, Circuit Judge:

Charise Shanell Stone was indicted for orchestrating a scheme to defraud mortgage companies. During trial, Stone made a motion for recusal based on the district court's ownership of stock in some of the companies, which the court denied. After she was convicted, the district court sentenced Stone to sixty months' imprisonment and ordered her to pay approximately $2.3 million in restitution. Stone appeals the district court's restitution calculation, determination of loss for purposes of sentencing, and denial of her motion for recusal. We affirm the district court for the reasons stated below.

I.

In April 2014, a grand jury in the Eastern District of Virginia indicted Stone for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343, false statements in violation of 18 U.S.C. § 1014, fictitious obligations in violation of 18 U.S.C. § 514, obstructing and impeding the due administration of internal revenue laws in violation of 26 U.S.C. § 7212, and failure to file an individual tax return in violation of 26 U.S.C. § 7203. As represented in the indictment, Stone convinced financially distressed homeowners to engage her services as a real estate agent to negotiate "short sales" with the mortgage holders on behalf of those homeowners. In such a short sale, a real estate agent finds a buyer for a mortgaged home at a price less than the balance owed on the mortgage and then negotiates with the mortgage holder for the holder to accept the sale price as satisfaction of the mortgage.

2

In this case, Stone fraudulently reported short sale prices to the mortgage holders in lower amounts than the sale proceeds that she actually received. She initially transferred ownership in the properties to herself, her husband, or one of her controlled entities and reported the sales to the mortgage companies, concealing these fraudulent transactions from both the homeowners and mortgage holders. Stone then quickly resold the properties, or "flipped" them, to predetermined buyers for more than the amounts she paid to the mortgage companies from the original short sales, again concealing these actions from the homeowners, buyers, and lenders. Stone also collected commissions and other fees on the sales as the real estate agent, although she was not licensed to sell real estate.

At trial, Stone filed a largely unintelligible motion for recusal,[1] providing the following grounds:

1. Defendant [sic] **rights to due process** have been violated, in light of the Court's performance and quest for defense to waive rights.

2. **A conflict of interest.** The Court has unconsentually [sic] appointed unwarranted counsel, to which alleged defendant's estate respectfully declines the 'offer' to contract thereto. Affirmative.

   Further, be it known, as the Court is the arbitrator, to which alleged defendant has no 'beneficial ties', the same sits in consort with the accuser(s).

   Therefore, let the record show, the hands of Hilton, Claude dba Judge Claude M. Hilton are in fact 'unclean'. Affirmative.

---

[1] Although Stone was represented by counsel, she filed the recusal motion pro se. Stone considers herself a "sovereign, non-United States citizen." Opening Br. 6; *see also El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013) (describing the "Sovereign Citizens movement").

3. The Court has willfully dishonored the **'Constitutional Challenge'** as set forth in Law and is **HEREBY requested to respectfully RECUSE himself.**

J.A. 463–64. At a hearing on the motion, the district court stated, "There's a motion here for me to recuse myself. I find that there's no basis. I never want any extra cases, but there's no basis for me to recuse myself on this one. And that motion is denied." J.A. 469. Representing herself on the motion, albeit with counsel at the table with her, Stone stated, "And the motion for recusal, Your Honor, is because when you asked the jury was there anyone here that had any mortgages, any stock in any of the banks—JP Morgan Chase, Bank of America, Ocwen—I would [like to] know if there's a conflict of interest with your financials, the prosecutors' financials, or any of the agents that are represented at this table." J.A. 470.[2] The court responded, "If there was a conflict, I wouldn't be here." J.A. 470. Stone pressed, "So you're saying that you don't have any stock in JP Morgan Chase or prison bonds or anything of that matter?" J.A. 470. The court repeated, "If there was a conflict, I wouldn't be here." J.A. 471. Stone continued, "Or any of the banks? So you don't have—" J.A. 471. The court again stated, "If there was a conflict, I wouldn't be here." J.A. 471.

During the trial presentation of its case in chief, the Government introduced documentary evidence and testimony of the homeowners, representatives of the lenders, investigators, and Stone's co-conspirators. Stone did not put on a defense. The jury found her guilty on all counts.

---

[2] The indictment lists Washington Mutual, Inc., IndyMac Bank, Countrywide, CitiMortgage, National City Bank, Bank of America, GMAC Mortgage, Wells Fargo, and Chase Home Finance, LLC—not Ocwen—as the victim lenders.

The presentence investigation report ("PSR") prepared by the probation office indicated that the "victim mortgage lenders suffered losses of approximately $2,330,722," representing the difference between the balances on the mortgages and the amounts Stone paid them from the short sales. J.A. 983. The PSR recommended the court order that amount be paid to the victim lenders in restitution and also utilize that same amount to calculate the recommended sentence under the advisory Sentencing Guidelines. Stone objected to the loss amount for purposes of the sentencing calculation, stating,

> While [the] probation office correctly calculated the loss amount of $2,330,722 based on the difference between the outstanding mortgage amount less the short sale proceeds, Ms. Stone contends that figure gives a distorted picture as to the actual losses by the lenders and gives the lenders a windfall they never would have realized had the lenders foreclosed and sold the properties in a foreclosure sale.

J.A. 912–13. She did not, however, object to the court fixing the restitution as the amount in the PSR. Stone requested a Guidelines-range sentence of sixty-three to seventy-eight months, "[s]hould the Court consider a variance for the loss amount." J.A. 914. At the sentencing hearing, Stone again stated, "Additionally, Your Honor, we would ask the Court to consider a variance in this case because the probation officer correctly calculated the [G]uideline loss as approximately $2.3 million, but this was a case involving short sales." J.A. 933. Specifically, Stone requested the district court "to consider a variance and . . . a sentence below the [G]uideline range." J.A. 934.

The district court adopted the PSR and calculated Stone's offense level at 28 with a criminal history category of I, resulting in a Guidelines range of seventy-eight to

ninety-seven months' imprisonment. The court sentenced Stone to a below-Guidelines sixty months' imprisonment and ordered restitution to the victim lenders in the full amount recommended by the PSR, approximately $2.3 million.[3] Stone filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

After sentencing and while this appeal was pending, Stone filed a motion for a new trial in the district court "based on her allegation that [the district court] should have recused itself based on an alleged conflict of interest stemming from its ownership of stock in some of the victim banks." *United States v. Stone*, No. 1:14CR127, 2016 WL 4707991, at *1 (E.D. Va. Sept. 7, 2016). The district court determined that this Court "has held that a judge's interest in the victim of a crime does not necessarily require recusal." *Id.* While conceding that it "did have a financial interest in some of the victim banks during the period it was assigned to [Stone's] case," the court nonetheless concluded that Stone "has not shown that either the interest or the restitution ordered was so substantial as to require recusal." *Id.* The court also noted that "[t]he banks at issue here—Wells Fargo, PNC, and JP Morgan Chase—are all large corporations that seemingly would not be significantly affected by the restitution ordered here." *Id.* at *2. For those reasons, the district court denied Stone's motion. *Id.*

---

[3] The district court also ordered Stone to pay approximately $150,000 in restitution to the Internal Revenue Service. Stone does not challenge that part of the order on appeal.

II.

On appeal, Stone challenges the district court's restitution order, loss determination for its sentencing calculation, and denial of her motion for recusal. We address each in turn.

A.

First we consider the district court's restitution determination. Ordinarily, the Court reviews a district court's restitution order for abuse of discretion. *See United States v. Freeman*, 741 F.3d 426, 431 (4th Cir. 2014). *See generally United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016) ("A district court abuses its discretion when it (1) acts arbitrarily, as if neither by rule nor discretion, (2) fails to adequately take into account judicially recognized factors constraining its exercise of discretion, or (3) rests its decision on erroneous factual or legal premises.").[4] However, when, as here, the defendant fails to object to the restitution order, we review for plain error, which places a heavier burden on the appellant than abuse-of-discretion review. *See United States v. Seignious*, 757 F.3d 155, 160 (4th Cir. 2014). A finding of plain error requires: (1) "the existence of legal error that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant"; (2) "that the legal error at issue be clear or obvious, rather than subject to reasonable dispute"; and (3) "that the clear or obvious legal error at issue have affected the appellant's substantial rights, which in the ordinary case means the defendant must demonstrate that it affected the outcome of the district

---

[4] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

court proceedings." *Id.* at 160–61. If plain error exists, we have "the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 161; *see* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

The Mandatory Victims Restitution Act ("MVRA") provides that the district court "shall order . . . that the defendant make restitution to the victim of the offense" upon conviction for "an offense against property . . . , including any offense committed by fraud or deceit." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). The sentencing court must direct a convicted defendant to either "return the property to the owner" or,

> if return of the property . . . is impossible, impracticable, or inadequate, pay an amount equal to—
>    (i) the greater of—
>      (I) the value of the property on the date of the damage, loss, or destruction; or
>      (II) the value of the property on the date of sentencing, less
>    (ii) the value (as of the date the property is returned) of any part of the property that is returned.

*Id.* § 3663A(b)(1). The probation office must include in its PSR "information sufficient for the court to exercise its discretion in fashioning a restitution order," including, "to the extent practicable, a complete accounting of the losses to each victim." *Id.* § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B) ("If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."). To aid the probation office in preparing its PSR, the Government is required, "after consulting, to the extent practicable, with all identified

victims, [to] promptly provide the probation officer with a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1). Should the parties dispute the amount of restitution, the court will resolve the matter "by the preponderance of the evidence." *Id.* § 3664(e). Ultimately, the Government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." *Id.*

The court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A); *accord United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) ("[T]he MVRA *requires* that a court enter an order of *full* restitution when the loss is caused by a property offense, and the focus of the court in applying the MVRA must be on the losses to the victim caused by the offense."). A court may base its restitution order on actual losses only, not intended losses. *United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008). The goals of the MVRA "are both compensatory and penal, requiring the defendant to return his ill-gotten gains to the victims of his crimes." *United States v. Ritchie*, 858 F.3d 201, 214 (4th Cir. 2017). However, the MVRA "does not allow a court to grant a windfall to the victim, and thereby unfairly punish a defendant by requiring him to pay back more money than he stole. But just as the victim is not entitled to a windfall, the defendant is not entitled to a bailout." *Id.* at 216. The determination of whether the district court committed error in its calculation of restitution is a fact-intensive inquiry. *See Seignious*, 757 F.3d at 163 (noting that a district court's view of the evidence must only be "plausible in light of the record viewed in its entirety"); *see also Ritchie*, 858 F.3d at 214 ("Calculations of the

9

appropriate amount of restitution will always rest upon the unique circumstances of each case, and this is particularly true in the mortgage foreclosure context where secured loans and property rights change hands for different reasons and upon different terms.").

In this case, "property," for § 3663A purposes, refers to what Stone fraudulently obtained from the mortgage holders: the value of the unpaid mortgages. *See Robers v. United States*, 572 U.S. __, 134 S. Ct. 1854, 1857 (2014) (noting that the term "property" in § 3663A "refers to the property the banks lost, namely, the money they lent to Robers, and not to the collateral the banks received, namely, the two houses"). Thus, our inquiry consists solely of determining whether the district court correctly determined that the values of the mortgages on the dates of the fraudulent acts were the remaining balances on those mortgages. Stone argues that the district court should have calculated restitution by subtracting the amounts Stone paid the mortgage holders from the proceeds Stone actually received from the undisclosed "flip" sales instead of from the balances owed on the mortgages. We conclude, however, that the evidence supports the district court's calculation.

A preponderance of the evidence shows that Stone fraudulently induced the lenders to approve the short sales and forego the full value of the mortgages. Many of the homeowners testified that they were not facing foreclosure or behind on their payments when contacted by Stone. Several of the owners were attempting to sell their houses through conventional means when Stone convinced them to contract with her. Representatives of the victim lenders testified that they preferred full satisfaction of mortgages to short sales. Stone also provided false information to the victim lenders by

10

depicting a given homeowner's financial status as more dire than in actuality. For example, she instructed one client to indicate in his hardship letter to the bank that his attorney had recommended that he file bankruptcy, although he had no attorney or any intention of filing bankruptcy. Thus, without any evidence to the contrary, the district court could only speculate as to when (or if) any of these homeowners would cease making mortgage payments. The evidence shows that the majority of the short sales were at best premature and not warranted by the homeowners' actual financial circumstances.

Moreover, there is no evidence that Stone obtained in the flip sales a fair market value for the houses. The bank representatives testified that the standard practice was to accept the highest offer in a short sale. Their testimony showed that Stone had fraudulently induced them to believe her in her false representations that a given price was the best and highest offer. Although typically a home's sale price reflects its market value in an arm's-length transaction, Stone quickly sold the properties to make a profit, flipping the homes the day of or day after the short sale. Bank representatives testified that lenders would not approve the short sale of a property that would be flipped the next day "because we would know we would not get the fair market value or the highest value of that property." J.A. 383–84. Indeed, "real property is not liquid and, *absent a huge price discount*, cannot be sold immediately." *United States v. Robers*, 698 F.3d 937, 947 (7th Cir. 2012) (emphasis added), *aff'd*, 134 S. Ct. 1854 (2014). There is no evidence that Stone did any due diligence in attempting to solicit the highest price possible. Consequently, the district court was justified by the record evidence not to rely on the

11

sale price of any given home as its market value for purposes of establishing the restitution amount.

The evidence offered by the Government clearly supports the mortgages balances as the value of those mortgages and thus the loss amount for purposes of restitution. And once the Government has satisfied its burden to offer evidence supporting its restitution calculation, the burden shifts to the defendant to dispute the amount with her own evidence. In other words, Stone had the burden to show that the values of the mortgages were something less than the amounts owed. However, Stone did not provide or point to any evidence to support her contention that the proceeds she received from the short sales were the values of the mortgages, although she had the opportunity to do so. *See Seignious*, 757 F.3d at 162–63 ("Seignious had fair opportunity to challenge [the] evidence [proffered by the Government to support its restitution calculation]."). Thus, "we conclude that the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* at 163. The district court properly determined that a preponderance of the evidence, at minimum, supported the restitution total offered by the Government. The court therefore did not err, much less plainly err, in its calculation of the restitution amount.

B.

We next analyze the district court's determination of loss for purposes of sentencing. In an appeal of a loss calculation, the Court will "review the factual findings of the district court for clear error . . . [and] its legal interpretation of the Sentencing Guidelines de novo." *United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000).

12

Specifically, "the determination of loss attributable to a fraud scheme is a factual issue for resolution by the district court, and we review such a finding of fact only for clear error." *United States v. Rand*, 835 F.3d 451, 467 (4th Cir. 2016). In general, the Court examines the reasonableness of a sentence for abuse of discretion. *See United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010).[5]

The district court must use "the greater of actual loss or intended loss" in its sentencing calculation. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(A) (U.S. Sentencing Comm'n 2014).[6] "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. n.3(A)(i). "'[R]easonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* § 2B1.1 cmt. n.3(A)(iv). "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (*e.g.*, as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.* § 2B1.1 cmt. n.3(A)(ii). With its loss calculation, "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is

---

[5] The Government argues that either plain error review or the invited error doctrine applies, both of which place heavier burdens on Stone. We need not consider these contentions, as Stone's arguments fail even under the abuse-of-discretion standard.

[6] The probation office used the 2014 version of the Sentencing Guidelines to calculate Stone's offense level.

entitled to appropriate deference." *Id.* § 2B1.1 cmt. n.3(C); *see also United States v. Catone*, 769 F.3d 866, 876 (4th Cir. 2014) (observing that the sentencing court need only make a "reasonable estimate of loss based on the available information in the record"). For property offenses, the district court must "tak[e] into account, as appropriate and practicable under the circumstances, . . . [t]he fair market value of the property unlawfully taken, copied, or destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(C)(i) (U.S. Sentencing Comm'n 2014). In turn, the loss amount "shall be reduced by . . . [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected." *Id.* § 2B1.1 cmt. n.3(E)(i). The court's finding must be supported by a preponderance of the evidence. *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003). As with restitution, "[t]he government bears the burden of proving the loss amount." *Catone*, 769 F.3d at 877. "While a sentencing court need only make a reasonable estimate of loss based on the available information in the record, an estimate that is unsupported by any evidence cannot be reasonable." *Id.*

For the same reasons stated in the restitution analysis above, the district court did not clearly err in its calculation of loss for the purpose of sentencing. *Cf.* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's *losses* as determined by the court . . . ." (emphasis added)); *Dawkins*, 202 F.3d at 715 (concluding that "the restitution amount depends on the amount of loss"). Because the evidence before the district court

14

supported a finding of loss in the amount of the mortgage balances less the proceeds Stone sent to the lenders, and because any other valuation of the mortgages was too speculative, the court's loss calculation was reasonable. Thus, "there is no basis for us to conclude that the district court's actual loss figure . . . is clearly erroneous." *Seignious*, 757 F.3d at 165.[7] Because the court used the correct loss figure in sentencing Stone pursuant to the advisory Guidelines, the district court did not abuse its discretion.

## C.

Finally, we consider Stone's appeal of the district court's denial of her motion for recusal. The Court "review[s] a judge's recusal decision for abuse of discretion." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 167 (4th Cir. 2014). We begin with a reading of the plain language of 28 U.S.C. § 455(a), which provides, in pertinent part, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Furthermore, a judge must recuse himself if "[h]e knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." *Id.* § 455(b)(4).

The basis of Stone's recusal argument lies with the district court's ownership of stock in some of the victim lenders, thereby implicating § 455(b)(4). That statute speaks of "financial interest" and "any other interest that could be substantially affected by the

---

[7] Because we find that the district court's determination of the actual loss amount was proper, we need not address the parties' intended loss arguments.

15

outcome of the proceeding." *Id.* Such a financial interest is defined as the "ownership of a legal or equitable interest, however small." *Id.* § 455(d)(4). The ownership of stock is a financial interest. *See Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 715 F.3d 501, 515 (4th Cir. 2013). "If a judge has an ownership interest in a party or in the subject matter in controversy, it matters not at all whether the interest is a large or infinitesimally small amount." *In re Va. Elec. & Power Co.*, 539 F.2d 357, 368 (4th Cir. 1976). As for "any other interest," "§ 455(b)(4) requires recusal only where a financial interest not immediately in controversy could be substantially affected by the outcome of the proceeding." *Kolon Indus.*, 748 F.3d at 170 n.8. Whether the "other interest" of § 455(b)(4) "is disqualifying depends upon the remoteness of the interest and its extent or degree." *In re Beard*, 811 F.2d 818, 831 (4th Cir. 1987). "As the interest becomes less direct, it will require disqualification only if the litigation substantially affects that interest." *Id.*

Our decision in *United States v. Sellers*, 566 F.2d 884 (4th Cir. 1977), controls the disposition of this case. There, the defendant was convicted of robbing a bank. *Id.* at 885. The defendant filed a "motion for a new trial in which he contended that the interest of the district judge and his family in the bank disqualified him." *Id.* at 886–87. In addressing the motion, the district court "described in detail his financial interest in the bank" as follows: "a holding company owns all of the bank's stock, and the judge and his family, individually or as trustees, have an interest in this company amounting to less than one percent of the issued and outstanding stock." *Id.* at 887. Furthermore, the judge's "brother is chairman of the board of directors and chief executive officer of the

16

bank and its holding company." *Id.* The district court determined that "ownership of stock in a bank should not prevent a judge from trying a person charged with robbing the bank, because the bank is not a party, and neither it nor any stockholder has a financial stake in the outcome of the case." *Id.*

We agreed, holding that "[n]o reason appears why owning stock in a holding company owning a bank that is robbed would lead to any reasonable apprehension that the stockholder judge would be partial." *Id.* We concluded that "[n]either the bank nor its parent company are parties to the case, and we [found] that any interest the judge might possibly have in the case is so remote as to be for all practical purposes non-existent." *Id.* We likewise held that the positions of the judge's brother in the holding company and bank did not warrant recusal. *Id.*

Applying *Sellers* to this case, the district court's ownership of stock in the victim lenders is not a § 455(b)(4) financial interest. Like the bank in *Sellers*, the victim lenders here are not parties to the action; this is a criminal case between Stone and the Government. *See id.* (concluding that "[n]either the bank nor its parent company are parties to the case"); *see also Party*, Black's Law Dictionary (10th ed. 2014) (defining "party" for trial purposes as "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant"). Nor is the district court's stock ownership at issue.

Moreover, the district court's stockholdings cannot be considered an "other interest" subject to § 455(b)(4). If the district judge's interest in *Sellers* was "so remote

17

as to be for all practical purposes non-existent," 566 F.2d at 887, the district court's interest in this case is even more so, given the victims are national banking behemoths. The approximately $2.3 million in restitution will have a negligible effect, if any, on the value of these lenders, each of which is worth many hundreds of millions—if not billions—of dollars. At best, the impact of the restitution order on the district court's stock interest constitutes "a bare expectancy or chance to ultimately benefit" and does not warrant recusal. *See In re Va. Elec. & Power Co.*, 539 F.2d at 368.

In any event, Stone failed to adduce any evidence that the district court owned enough stock in the massive corporate lenders to remove this case from the ambit of *Sellers*. In particular, Stone has not presented the Court with the financial disclosure report on which she bases her appeal. Despite the Government putting her on notice that the financial disclosure report is not part of the record before this Court, *see* Resp. Br. 20, Stone has not attempted to make the contents of the report available to the Court in any form or fashion. Without that evidentiary basis in the record, the Court would engage in utter speculation to hold the district court abused its discretion. Although the district court admitted that it "did have a financial interest in some of the victim banks during the period it was assigned to Defendant's case," it is apparent that Stone "has not shown that either the interest or the restitution ordered was so substantial as to require recusal." *Stone*, 2016 WL 4707991, at *1. Furthermore, we do not know the character of the district court's ownership of stock in the victim lenders, which could bear on whether § 455 applies. For example, § 455(d)(4)(i) exempts "[o]wnership in a mutual or common investment fund that holds securities" from the recusal requirements.

As for § 455(a), the "objective standard asks whether the judge's impartiality might be questioned by a reasonable, *well-informed* observer who assesses *all the facts and circumstances*." *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) (emphasis added). As just noted, we cannot step into the shoes of a well-informed observer due to Stone's failure to provide the Court with the district court's financial disclosure report. Thus, we cannot assess all the facts and circumstances because we do not have them before us. It is the appellant's responsibility to provide the Court with the information it needs to decide an issue on appeal. *See* Fed. R. App. P. 30(a)(1). Regardless, for the same reasons supporting our conclusion with regards to Stone's § 455(b)(4) argument, we are not convinced that the district court's ownership of stock in the victim lenders would require recusal under § 455(a). We therefore decline to find that the district court abused its discretion in its determination not to recuse.

III.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.