**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1891**

———————

CHRISTINE GIBBONS,

        Plaintiff – Appellant,

v.

BETTY ANN GIBBS, in her official capacity as Secretary of the Lynchburg Electoral Board, and in her personal capacity; STEVEN TROXEL, in his official capacity as Vice Chair of the Lynchburg Electoral Board, and in his personal capacity,

        Defendants – Appellees.

———————

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Robert S. Ballou, District Judge. (6:23-cv-00035-RSB-CKM)

———————

Argued: September 12, 2025                    Decided: February 11, 2026

———————

Before THACKER, QUATTLEBAUM, and HEYTENS, Circuit Judges.

———————

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Thacker and Judge Quattlebaum joined.

———————

**ARGUED:** Stephen B. Pershing, KALIJARVI, CHUZI, NEWMAN & FITCH, P.C., Washington, D.C., for Appellant. Blaire Hawkins O'Brien, HARMAN CLAYTOR CORRIGAN & WELLMAN, Richmond, Virginia, for Appellees. **ON BRIEF:** David P. Corrigan, HARMAN CLAYTOR CORRIGAN & WELLMAN, Richmond, Virginia, for Appellees.

———————

TOBY HEYTENS, Circuit Judge:

When a district court rules that certain types of evidence will be admitted but others will not, parties must proffer the evidence they wish to present to preserve appellate review. That rule does not vanish simply because a litigant predicts an adverse party will object to the evidence and the objection will be sustained. Here, a party largely failed to proffer the evidence it would have put on at trial and has forfeited appellate review. We also see no abuse of discretion in the evidentiary rulings to which the appealing party did preserve objections or in the district court's conduct of jury selection. We thus affirm.

I.

This case—which is before us a second time—involves the appointment of a general registrar of elections in Lynchburg, Virginia. Under Virginia law, elections are overseen locally by three-member boards. Va. Code § 24.2-106(A). Each local board includes two members from the sitting governor's party and one from the party that got the second-most votes in the last gubernatorial election. *Id.* Each board, in turn, appoints a general registrar. § 24.2-110. Boards may remove registrars for failing to "maintain certification" or "discharge the duties of [their] office." § 24.2-109(A). Registrars may not, however, be removed because of their political affiliation, nor may a board "fail[ ] to reappoint" an incumbent registrar on that basis. *McConnell v. Adams*, 829 F.2d 1319, 1322 (4th Cir. 1987).

Plaintiff Christine Gibbons was unanimously appointed registrar in 2018 by a board that included two Democrats and one Republican. When plaintiff's most recent term expired in 2023, the latest gubernatorial election had produced a board with two

2

Republicans and one Democrat. Before plaintiff's term expired, she was told the board would be accepting applications for her position and that she would have to reapply if she wanted to be considered. Plaintiff reapplied and was among the four candidates interviewed. The board ultimately appointed a different candidate, who was a registered Republican.

Plaintiff sued the board and its two Republican members, alleging the decision to replace her "was not based on any deficiencies in her performance, but was motivated by partisan political animus toward her non-partisanship." JA 29; see Pl.'s Br. 15 (describing plaintiff as "an admitted independent"). The defendants moved to dismiss based on sovereign immunity. The district court dismissed plaintiff's claim against the board but allowed her claim against the individual defendants to go forward. The individual defendants appealed that order, and this Court affirmed. See *Gibbons v. Gibbs*, 99 F.4th 211 (4th Cir. 2024). The case was tried to a jury, which returned a verdict for the defendants. This time, plaintiff appeals.

## II.

We start with plaintiff's argument that the district court failed to properly screen prospective jurors for partisan bias. We review a district court's management of jury selection for abuse of discretion, see, *e.g.*, *United States v. Tsarnaev*, 595 U.S. 302, 316 (2022), and we see none here.

The district court began jury selection with its own questioning of prospective jurors. When someone reported seeing news coverage about the case, the court asked follow-up questions about the nature of the coverage and whether it would impact the

person's ability to be impartial. The court asked all prospective jurors about their "knowledge" and "any opinions about the administration of elections in the City of Lynchburg," and whether their "personal political views or party affiliation [would] influence [their] ability to evaluate impartially the evidence introduced at trial and to render a fair verdict." JA 195, 198. The court also asked prospective jurors if they had "participated in the administration of local, state, or federal elections," and posed follow-up questions to those who said yes or had otherwise participated in political races. JA 199. One of the court's last questions was whether the prospective jurors were "capable of basing [their] decision in this case on the evidence presented and the Court's instructions, independent of [their] personal or political views." JA 203.

Although it was not required to do so, see Fed. R. Civ. P. 47(a), the district court also allowed the parties to question prospective jurors. See *United States v. Council*, 77 F.4th 240, 253 (4th Cir. 2023) (reviewing courts "must consider the district court's jury selection process in its entirety"). For her part, plaintiff asked whether any prospective jurors or members of their immediate families "ha[d] an occupation that touches on politics or political campaigns." JA 206–07. Plaintiff also asked how much attention the prospective jurors paid "to current events" and whether they regularly talked "about current events or politics with [their] family or [their] friends and co-workers." JA 207.

On appeal, plaintiff challenges the district court's decision to prevent her from asking more targeted questions designed to "reveal partisan political bias among potential jurors." Pl.'s Br. 17. Specifically, plaintiff protests the court's refusal to allow questions about "political group memberships; [prospective jurors'] sources of news; their sharing of

4

beliefs with groups involved in the Jan. 6th election protests; their beliefs about the 2020 election result; and whether as election officials they would be disinclined to certify the 2024 presidential election result if it did not favor their preferred candidate." Pl.'s Br. 4; see *id.* at 17 n.4 (stating this appeal "is limited to the *voir dire* questions enumerated in this brief"). These limits, plaintiff asserts, "led the trial court to recede to a level of abstraction . . . that was too remote to allow meaningful screening of the venire." *Id.* at 21.

We see no abuse of discretion. "The process of selecting an impartial jury is delicate and involves complex tradeoffs" between competing interests. *Council*, 77 F.4th at 254. After all, "[t]he Constitution guarantees both criminal and civil litigants a right to an impartial jury," *Warger v. Shauers*, 574 U.S. 40, 50 (2014), and requires "district courts to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence," *United States v. Bowman*, 106 F.4th 293, 302 (4th Cir. 2024) (quotation marks and brackets removed). But prospective jurors also have "legitimate privacy interests," and there is a risk that "pointed questions" about sensitive topics might "exacerbate whatever prejudice might exist without substantially aiding in exposing it." *Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 512 (1984) (first quote); *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 224–25 (2017) (quotation marks removed) (second and third quotes). The Supreme Court has specifically flagged the dangers of questions about prospective jurors' "political opinions and associations," emphasizing that such questions will rarely—if ever—"be appropriate." *Connors v. United States*, 158 U.S. 408,

5

415 (1895).[1] Here, the district court struck this difficult balance by asking (and allowing plaintiff to ask) questions that probed the prospective jurors' degree of political engagement and ability to render an impartial verdict, while also limiting what questions plaintiff could ask.

"Part and parcel of deference to the trial court's conduct of voir dire is a reluctance to second-guess the court's decision to refuse inquiry into certain matters." *United States v. Lancaster*, 96 F.3d 734, 739 (4th Cir. 1996). Plaintiff has cited no case in which a trial court was reversed for failing to ask questions about prospective jurors' political views or affiliations beyond the sorts of questions that were asked here, and this will not be the first. Mindful that we may not "substitute [our] judgment for that of the district court," *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995), we conclude the court did not exceed its "broad discretion" in deciding "what questions" it would not permit plaintiff to ask, *Tsarnaev*, 595 U.S. at 316.

### III.

We turn next to plaintiff's assertion that the district court improperly prevented her from presenting certain evidence. The defendants contend that plaintiff failed to preserve her evidentiary challenges for our review. In large measure, we agree. See Part III(A). And

---

[1] In contrast, *Peña-Rodriguez* makes clear that cases involving racial bias sometimes require such "pointed questions" because "racial bias implicates unique historical, constitutional, and institutional concerns." 580 U.S. at 224. In that context, the "effort to address the most grave and serious statements of racial bias is not an effort to perfect the jury but to ensure that our legal system remains capable of coming ever closer to the promise of equal treatment under the law that is so central to a functioning democracy." *Id.*

for the limited number of challenges that are preserved, we conclude plaintiff has failed to demonstrate that the district court abused its discretion. See Part III(B); see, *e.g.*, *King v. McMillan*, 594 F.3d 301, 310 (4th Cir. 2010) ("We review a district court's ruling on the admission of evidence for abuse of discretion.").

A.

Federal Rule of Evidence 103(a)—captioned "Preserving a Claim of Error"—tells litigants what they must do to preserve an argument that a trial court improperly "admit[ted] or exclude[d] evidence." A party who contends that a district court erred in "exclud[ing] evidence" must have "inform[ed] the court of [the evidence's] substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2). At the same time, "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b).

As the advisory committee's note explains, Rule 103 distinguishes between situations when a pretrial ruling "is definitive" versus those when it is not. Fed. R. Evid. 103 advisory committee's note to 2000 amendment. In the former situation, "a renewed objection or offer of proof at the time the evidence is to be offered is more a formalism than a necessity" and thus is not required. *Id.*; accord *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999) (en banc) ("Definitive rulings . . . do not invite reconsideration."). But when "the trial court appears to have reserved its ruling or to have indicated that [a] ruling is provisional," Rule 103 requires the proponent of the evidence "to bring the issue to the court's attention subsequently" or be deemed to have abandoned

7

the issue. Fed. R. Evid. 103 advisory committee's note to 2000 amendment. "[W]hen there is doubt on that point," it is the offering party's "obligation . . . to clarify whether an *in limine* or other evidentiary ruling is definitive." *Id.*

Here, there is no need to guess: The district court *repeatedly* told plaintiff that the pretrial rulings she now challenges were subject to clarification or reconsideration later.

Nearly a month before trial, the defendants moved to exclude, among other things: (a) "evidence and testimony related to the 2020 Presidential Election and events on January 6, 2021 at the United States Capitol"; and (b) "evidence related to an alleged 'conspiracy' to replace registrars." JA 37. The court addressed that motion at a pretrial hearing 12 days before the start of trial. During the hearing, the court had the following exchange with plaintiff's counsel about evidence involving the 2020 election and the events of January 6, 2021:

> THE COURT: So I'm going to grant [defendants' motion to exclude] as it relates to attending January 6th, pictures about January 6th, discussions about the 2020 presidential election nationally. There's been no indication *at this point* that there's any evidence that [Defendant] Gibbs talked about the Virginia election otherwise being corrupt.
>
> And the defendant doesn't seek to exclude any evidence—I'm certainly going to allow discussions about [Defendant] Gibbs' view of how the 2020 election was administered by the Lynchburg registrar, whether it was corrupt or not. And I'm going to allow all the evidence . . . but I'm not going to restrict the plaintiff's evidence with respect to, *at least at this time*, the 2020 election in Lynchburg. Understanding that *there may be a point in time in which the door gets opened* for a more global discussion. *But at this point in time*, I think the defendants need to open that, or there needs to be an otherwise showing that in June 2023, when this decision is made, that some national view about what happened three years earlier is what colored—what happened three years earlier nationally is what colored the view about a decision that is made locally. But *I'm not aware of any evidence at this point*, so I'm going to grant the motion as it relates to the national election.

[PLAINTIFF'S COUNSEL]: This is exactly the reason we have conferences like this, so we can be, all of us, aware *when the time comes* and *we'll have sidebar ahead of time*, and *we'll remember this conversation*. But, again, I'm troubled by the need to split that hair. Her attitude was global and it was local and it was the same attitude. *So I'm going to probably be coming to the Court sometime during the trial and asking, "Your Honor, please, what do we do?"*

THE COURT: That's fine. I would rather keep the genie in the box rather than trying to get it back.

[PLAINTIFF'S COUNSEL]: Understood. Understood.

JA 93–94 (emphases added).

The district court's treatment of the other relevant part of the motion in limine—to exclude "evidence related to an alleged 'conspiracy' to replace registrars," JA 37—was similarly tentative and nuanced. After a lengthy back and forth with counsel in which the court identified some types of evidence it thought would or would not be admissible, the court made the following ruling:

THE COURT: So here's what I'm going to do with respect to this. *At this point in time*, I'm going to grant the motion, but—so, [plaintiff's counsel], the problem with the evidence, *as I understand it right now*, to be able to make this suggestion that there was a broader scheme—not to use the word "conspiracy," but a broader scheme to replace Democratic-appointed registrars with Republican-appointed registrars *is that right now, the only evidence that I understand that is going to be offered* is that [one or both of the individual defendants] spoke to other members, other Republican electoral board members in another locality and the other locality did something similar to what happened here, they either replaced them or failed to reappoint them.

And there's—the missing link is that there's no other evidence suggesting that that was with a partisan motivation, that there is a—there were discussions beforehand, a plan, as well. *And without that link*, I'm not going to let you then go to make that inference and put the other evidence on as well.

9

> So I'm going to grant the motion *at this point*. It doesn't mean that if the evidence exists, you know, I won't revisit it. But just, "I had a meeting and they made a decision to replace the registrar" is simply not enough to get beyond that.
>
> *I'll let you proffer the evidence at trial that you would otherwise want to put on if you want me to reconsider it. But I would need to know specifically what the evidence is before we get there.*

JA 100–01 (emphases added).

The next day, the district court entered a brief written order memorializing its oral rulings. The order said, "for the reasons stated on the record," the individual defendants' motion was granted "[t]o the extent it seeks to exclude evidence and testimony related to the national 2020 Presidential Election and events on January 6, 2021," and "[t]o the extent it seeks to exclude evidence and testimony related to an alleged 'statewide conspiracy to replace registrars.'" D. Ct. ECF No. 104, at 1–2. The bullet point containing the first ruling—but not the second—also stated the motion was "DENIED without prejudice as to evidence and testimony related to the administration of elections in the City of Lynchburg." *Id.* at 2 (boldface removed).

That same day, plaintiff filed a motion seeking two "clarification[s]" of the court's written order. D. Ct. ECF 106, at 1. First, plaintiff asked whether the "conspiracy" portion of the court's ruling covered evidence that was "limited to [the relevant local] [d]istrict and limited to personal efforts of the [individual] defendants to encourage other localities' boards to do as they were doing with the Lynchburg registrar's position." *Id.* at 2. Second, plaintiff sought clarification about whether the court would, consistent with its oral ruling, "entertain at trial a proffer of evidence" about the connection between the individual defendants and efforts to remove local registrars in other jurisdictions. *Id.* at 2–3.

10

The district court addressed plaintiff's motion on the first day of trial before starting jury selection. After another exchange during which it discussed the admissibility of certain types of evidence, the court made the following ruling:

> THE COURT: All right. So at this point I wasn't intending to circumscribe the evidence of actions taken by these particular defendants. Certainly there's going to have to be, like every other piece of evidence, an adequate foundation to be able to get it in. *So to the extent that—the motion to reconsider is granted to the extent there's clarification that it wasn't intended to circumscribe specific action taken by the defendants.* I'll grant that as well.

JA 143 (emphasis added). The court then discussed with counsel the process for picking a jury before returning to evidentiary issues. Although the court periodically identified certain broad types of evidence that would or would not be admissible, it emphasized that particular issues would have to be addressed when the evidence was proffered and that admissibility questions would often turn on how a question was phrased and what foundation had been laid. The court stated:

> THE COURT: *I'll address the evidentiary questions as they come up*, but let's not lose sight of what this case is about; and that is that in June of 2023, [plaintiff] was not reappointed as the registrar. The claim that is made is that that violated her First Amendment rights because the decision was made for partisan political reasons; and as a consequence, she lost her job and her First Amendment rights were violated at that time. Certainly there's going to be evidence as to what led to that decision and so forth. The further we stray from 2023 and when [the individual defendants] came onto the electoral board, then the further we get from relevancy to this particular case.

JA 154 (emphasis added).

The court returned to evidentiary issues immediately before opening statements. The court declined to make any advance rulings on the admissibility of exhibits, noting it had not even seen plaintiff's objections to the defendants' proposed exhibits. But consistent

11

with its earlier statements, the court reiterated that whether any piece of evidence would be

admissible would depend on future developments:

> *I'm a little bit reticent just to come in and say "grant, deny, grant, deny" the objection without the parties having an ability to at least make some argument, if they want to do so.*
>
> But the evidence has to be tied to the decision that was made not to reappoint. To the extent that—and that necessarily means that you have to be able to establish a lead-up to that. And the issue—the further you get away from June of 2023 [when plaintiff was not reappointed], the more difficult it is to say that that's part of the lead-up that's relevant. If it's something that happened on May the 31st and the decision is called on June the 1st, pretty daggone relevant. But if it goes back to January of 1978—I know we're not going back that far—then we've begun to stray too far. *There's a gray area in between.* That's what we have to tie this to is knowledge by the defendants and action by the defendants that led to the decision not to reappoint [plaintiff]. *And I'm going to give the parties free reign in that regard.* But a general dislike by a general group of people—by a group, even if the plaintiffs are—or the defendants are part of that group—*may have more difficulty getting into evidence.* It's like saying because you're a member of the Kiwanis Club and the Kiwanis Club takes A, B, and C positions; therefore, you've adopted every single one of those positions, that's not the way a trial is going to otherwise occur, right? And just because a group may protest outside of [plaintiff's] home, if the defendants weren't part of it, it becomes more difficult to be able to say that that's tied to them. *But if the defendants are part of it, then maybe it is. So that's going to be part of the parsing that we're going to have to deal with.*

JA 248–49 (emphases added).

Once the trial began, plaintiff offered only two pieces of evidence—proposed

exhibits 82 and 89—whose exclusion she challenges on appeal. But neither proposed

exhibit was made part of the district court record, and plaintiff failed to correct that

oversight—either before the district court or when preparing the joint appendix for this

appeal. See Fed. R. App. P. 10(e)(2) (providing a procedure for correcting or

supplementing the record on appeal "[i]f anything material to either party is omitted from

or misstated in the [district court] record by error or accident"). To be clear, we do not mean plaintiff *merely* failed to comply with Federal Rule of Appellate Procedure 30(a)'s instruction that all "parts of the record to which the parties wish to direct the court's attention" must be included in the joint appendix. Because proposed exhibits 82 and 89 were not made part of the district court record in the first place, they are not part of "the record on appeal," Fed. R. App. P. 10(a), and this Court has no way of accessing them. "It is the appellant's responsibility to provide the Court with the information it needs to decide an issue on appeal." *United States v. Stone*, 866 F.3d 219, 230 (4th Cir. 2017). And based on the information we do have—the litigants' (unsurprisingly, differing) descriptions of proposed exhibits 82 and 89 and the district court's rulings about them—we conclude plaintiff has failed to carry her burden of showing the district court committed reversible error by excluding those exhibits. See *id.* (similar).[2]

Nearly all of plaintiff's other evidentiary arguments fail for lack of specificity or because plaintiff never obtained a definitive ruling from the district court. Plaintiff broadly argues that the district court excluded "key evidence of the defendants' partisan political motivation," "evidence of partisan bias underlying the removal decision at issue," or "all evidence"—or "the most important evidence"—about certain topics. Pl.'s Br. 5–6, 16. But this Court "can assign no error to the exclusion of evidence, even a 'blanket' exclusion, where the [appealing party] has not made a specific proffer to the court." *Carter v. Ball*,

---

[2] Plaintiff identifies another piece of evidence she "had the right to have an informed and impartial jury consider." Pl.'s Br. 15. As the cited transcript pages show, the exhibit in question was admitted without objection.

33 F.3d 450, 457 (4th Cir. 1994). Subject to the limited exceptions just noted and two others discussed later in Part III(B), plaintiff failed to do so here.

Plaintiff insists she need not have offered the missing evidence—or even tried to lay foundation for it—because "[h]ad she done so, the defendants would have objected, and the objections would have been sustained." Pl.'s Br. 11. But, as we have explained, the district court repeatedly emphasized that its decision to admit or exclude evidence would depend on foundation and context and that the court would thus "need to know specifically what the evidence is" before making a final decision. JA 101. And "we will not reverse a district court's judgment based on assumptions about how the court would have ruled had a party attempted to ask a question it never tried to ask." *Council*, 77 F.4th at 254; accord *United States v. Vest*, 116 F.3d 1179, 1188 (7th Cir. 1997) (holding that it was "too late to reopen [an] issue . . . on appeal" when a trial court made a pretrial ruling excluding witnesses' testimony but allowed the party to seek leave to call the witnesses at trial and the party never did).

### B.

There are, however, two types of evidence where the district court clearly made a final determination and about which plaintiff consistently objected. First, the court stated that evidence about national political events (or the individual defendants' views about them) would not be admitted absent some tangible connection to their decision not to reappoint plaintiff. Plaintiff protested this ruling, insisting that the topics could not be separated because "the same animus" motivated both. JA 90. Second, and relatedly, the court stated that it would not permit evidence about other Virginia localities' failure to

14

reappoint their registrars without evidence linking those decisions to the individual defendants' decision not to reappoint plaintiff. For her part, plaintiff insisted that other local boards removed their registrars around the same time as part of a common scheme, and the fact that one of the individual defendants was "seen at a meeting" of one such board just days before that board removed its registrar was evidence of that scheme. JA 96. We see no abuse of discretion on either topic.

To begin, we do not understand the district court to have made an unconditional ruling that evidence about national political events (or the individual defendants' beliefs about them) were simply out of bounds. To the contrary, the court acknowledged the possibility that what happened locally could have been "an extension of [the] overall more national discussion about what happened during the [2020] election," JA 88, and it repeatedly invited plaintiff to attempt to make such a connection. At the same time, however, the court stressed that the central issue in this case was why plaintiff was not reappointed in 2023 and that discussion of broader matters threatened to derail the trial. See JA 94 ("I would rather keep the genie in the box rather than trying to get it back."); JA 108 ("This case [is] not about 2020. This case is not about what happened in that presidential election. This case is about a decision that was made in June of 2023 to replace [plaintiff]."). Federal Rule of Evidence 403 grants district courts "broad discretion" in

making such calls, *United States v. Sanders*, 107 F.4th 234, 255 (4th Cir. 2024), and we see no abuse of that discretion here.[3]

The district court's handling of evidence about other jurisdictions was similarly nuanced. Plaintiff insists that the court forbade her from introducing evidence about "the [individual] defendants' involvement in partisan efforts to replace incumbent registrars" in other localities. Pl.'s Br. 10. But the district court said no such thing—indeed, the court took pains to say it was *not* restricting "evidence of actions taken by these particular defendants." JA 143. Instead, the court concluded that the mere fact that one or both individual defendants "spoke to" members of other boards and that those boards then "did something similar to what happened here" was itself insufficient to raise an "inference" of a common scheme. JA 100; see Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). At the same time, the court emphasized that plaintiff was free to try to establish "the missing link" and invited her to "proffer the evidence at trial that [she] would otherwise want to put on." JA 100–01. Those proffers never came, and plaintiff

---

[3] At oral argument, plaintiff insisted that the district court's rulings rested solely on Federal Rules of Evidence 401 (which defines relevance) and 402 (which states that "[i]rrelevant evidence is not admissible"). See Oral Arg. 7:34–7:39. We disagree. The Federal Rules of Evidence do not require district courts to cite a particular rule for their evidentiary rulings, see Fed. R. Evid. 103(c), and the district court did not do so here. In addition, statements like "[t]he further we stray from 2023 and when [the individual defendants] came onto the electoral board, then the further we get from relevancy to this particular case," JA 154, sound much more in Rule 403 than 401. And while "an explicit ruling may be preferable and may indeed aid this Court in reviewing the record," *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988), we do not require a district court to "enunciate its view of the probative-prejudice calculus" that Rule 403 demands, *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir. 1986).

neither deposed the individual defendants before trial nor called them during her own case in chief. And so, for a final time, we see no abuse of discretion. Accord *Wilson*, 182 F.3d at 566 ("Objections alert the judge at critical junctures so that errors may be averted. When a judge has made a conditional, contingent, or tentative ruling, it remains possible to avert error by revisiting the subject.").[4]

\*    \*    \*

The judgment is

*AFFIRMED*.

---

[4] Parts of plaintiff's presentation can be read as suggesting that the jury's verdict was against the weight of the evidence or that she had inadequate time for discovery. Any such arguments are not properly before us because they were not made in the argument section of plaintiff's opening brief. See, *e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).